GEORGE PIQUETTE, Plaintiff-Appellant, v. MIDTOWN ANESTHESIA ASSOCIATES *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 1—88—0341, 1—88—1037 cons.

Opinion filed December 14, 1989.

Mullen, Minella & Chase, of Chicago (John C. Mullen and Cynthia L. Chase, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (David H. Kistenbroker and Nancy E. Paridy, of counsel), for appellees Midtown Anesthesia Associates and Robert Paulissian.

Johnson, Cusack & Bell, Ltd., of Chicago (Brian C. Fetzer, H. Patrick Morris, and Thomas H. Fegan, of counsel), for appellee Michael Friedman.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, George Piquette, brought a medical malpractice action in the circuit court of Cook County against defendants, Midtown Anesthesia Associates (Midtown); Robert Paulissian, M.D.; and Michael Friedman, M.D. Piquette sought damages arising from the alleged negligence of defendants in performing a surgical procedure. The trial court granted defendants' motions for summary judgment. Piquette now appeals, contending that the trial court erred in granting summary judgment for defendants.

We affirm.

BACKGROUND

The record shows that on the morning of July 18, 1978, Piquette underwent a laryngoscopy at Illinois Masonic Hospital. Dr. Friedman performed the procedure, and Dr. Paulissian assisted the anesthesiologists. In this surgical procedure, Dr. Friedman inserted an endotracheal tube down Piquette's throat. Dr. Friedman then inserted a laryngoscope through the tube. This allowed him to view the inside of Piquette's throat, perform a biopsy, and strip Piquette's vocal cords.

After awaking from anesthesia, Piquette was taken to his hospital room. Dr. Friedman visited Piquette and was the first person to whom Piquette spoke after the operation. Piquette noticed that he had difficulty speaking to Friedman. Piquette put his hand to his mouth, and a tooth cap fell into his hand; the cap was broken into two pieces. He was discharged from the hospital that day.

Piquette filed his original complaint on October 22, 1979. He filed his third amended complaint on April 16, 1984. He named as defendants Drs. Friedman and Paulissian, and Midtown. Counts I and II of the nine-count complaint alleged that Midtown was negligent in hiring Dr. Paulissian and two other anesthesiologists involved in the surgery. Counts III and IV alleged that Drs. Paulissian and Friedman negligently struck Piquette's teeth during the surgery, causing the cap to break. Counts V through VIII alleged that defendants failed to warn Piquette that his cap may be struck during the operation, and to thereafter receive his informed consent. Count IX alleged a theory of

recovery against defendants based on the doctrine of *res ipsa loquitur*. Defendants answered, denying all material allegations.

The trial court subsequently granted defendants' motion to bar Piquette from presenting any expert testimony at trial. (See 107 Ill. 2d R. 219(c)(iv).) On July 28, 1987, Dr. Paulissian and Midtown filed a motion for summary judgment; Dr. Friedman did likewise on August 18. Dr. Friedman subsequently filed an affidavit essentially stating: he only assisted in the administration of anesthesia to Piquette; it was improbable that the oxygen mask used on Piquette prior to surgery would have damaged the tooth cap; he did not place the mask on Piquette's face; and he met the standard of care in his treatment of Piquette. Piquette filed no evidence rebutting these statements.

On December 22, 1987, the trial court granted summary judgment for Dr. Paulissian and Midtown on all counts addressed to them. However, the trial court granted only a partial summary judgment for Dr. Friedman. The court found that the record did not contain sufficient evidence pertaining to count VI on which to base a summary judgment. Piquette filed a notice of appeal from this order.

Dr. Friedman subsequently filed a motion for summary judgment on count VI. The motion was accompanied by an affidavit stating essentially that Friedman did not deviate from the standard of care owed to Piquette, specifically addressing the issue of informed consent. On March 3, 1988, the trial court granted summary judgment for Dr. Friedman. Piquette filed a notice of appeal from this order. We consolidated the appeals.

OPINION

■ When a plaintiff appeals from a trial court's grant of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.

■ ■ The purpose of summary judgment proceedings is not to try an issue of fact, but to determine whether one exists. Where facts contained in an affidavit in support of a motion for summary judgment are not contradicted by a counteraffidavit, such facts are admitted and must be taken as true. Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or other sources, summary judgment is then appropriate. If the moving party supplies facts which, if not contradicted, would entitle that person to

a judgment as a matter of law, the opposing party cannot rely on his complaint or answer alone to raise genuine issues of material fact. Summary judgment is appropriate in medical malpractice cases where there is no genuine issue as to any material fact. *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 325-26, 431 N.E.2d 48, 51 (and cases cited therein).

## I

In count IX of his complaint, Piquette invokes the doctrine of *res ipsa loquitur* against all defendants. *Res ipsa loquitur* involves a type of circumstantial evidence that permits the fact finder to draw an inference of negligence. The doctrine permits circumstantial evidence as proof of negligence where direct evidence is primarily within the control of the defendant. *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 592, 491 N.E.2d 803, 808-09.

However, a plaintiff must establish three elements before this inference of negligence will arise: (1) the event must be of a kind which ordinarily would not occur absent someone's negligence, (2) the event must be caused by an instrumentality or agency within the management or control of the defendants, and (3) the injury was not due to any voluntary act on the part of the plaintiff. The first element may be established either by presenting expert testimony to that effect, or by showing that the negligence was so grossly apparent that it falls within the common knowledge of nonmedical persons. *Taylor*, 142 Ill. App. 3d at 592; *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 175, 392 N.E.2d 203, 210.

Piquette argues that defendants' alleged negligence was so grossly apparent as to fall within the common knowledge of nonmedical persons. Thus, he need not provide expert testimony to support the first element. We disagree. Defendants' affidavits explained that broken teeth are a risk of a laryngoscopic procedure. They further explained that this injury is not so grossly indicative of negligence as to fall within the common knowledge of nonmedical persons. The trial court so held and we agree. The affidavits also stated that defendants acted in accordance with the prevailing standard of care.

The only proof of negligence that Piquette has produced is the broken tooth cap itself. However, proof of a bad result or mishap is not, in and of itself, evidence of negligence (*Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 240, 251 N.E.2d 105, 107, quoting *Scardina v. Colletti* (1965), 63 Ill. App. 2d 481, 488, 211 N.E.2d 762, 765) and it will not, standing alone, support a *res ipsa loquitur* cause of action. (*Chiero*, 74 Ill. App. 3d at 175, 392 N.E.2d at 210.) We con-

clude that Piquette's invocation of the doctrine of *res ipsa loquitur* will not preclude entry of summary judgment for defendants.

## II

■ In counts V through VIII of his complaint, Piquette alleges that defendants failed to warn him that his tooth cap may be struck during the operation, and to thereafter receive his informed consent. This negligence must also be established by expert medical testimony. *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 184-85, 262 N.E.2d 156, 161.

■ As in his *res ipsa loquitur* claim, Piquette offered no expert testimony to establish this alleged negligence. He again argues that defendants' failure to warn was so grossly negligent as to fall within the common knowledge of nonmedical persons. We disagree and hold otherwise. Defendants' affidavits contain evidence that defendants met the proper standard of care on this issue. This evidence is unrebutted; the record contains no evidence from an expert that a failure to warn under these circumstances was a deviation from the proper standard of care. We uphold the trial court's grant of summary judgment for defendants on counts V through VIII of the complaint. See *Ziegert v. South Chicago Community Hospital* (1981), 99 Ill. App. 3d 83, 92-93, 425 N.E.2d 450, 458-59.

## III

Piquette lastly contends that he can rely on the trial testimony of defendants themselves, pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102), to establish the applicable standard of care. See *Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 934, 486 N.E.2d 1329, 1335.

■ This proffered evidence is insufficient to escape the grant of summary judgment for defendants. Even if defendants were to establish the applicable standard of care, Piquette would still be required to establish a deviation from that standard. Defendants, however, state in their affidavits that they acted within the standard of care. Further, Piquette has not provided such evidence; all he has shown is the broken tooth cap. As we stated earlier, that alone is not proof of negligence. The bare assertion that a section 2—1102 examination of defendants might establish the applicable standard of care and deviation therefrom is not a substitute for actual proof so as to prevent the entry of summary judgment under these circumstances. See *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 329, 431 N.E.2d 48, 53.

Piquette has failed to provide any facts to refute defendants' spe-

cific assertions in their affidavits, which describe their competent treatment. Where a plaintiff has failed to present expert medical opinion to sustain the allegations in his complaint as contrasted to the affidavits filed by the defendant, or evidence that he would be able to obtain such opinion in the future, then summary judgment in favor of defendant is proper. (*Bennett,* 103 Ill. App. 3d at 327, 431 N.E.2d at 52.) This cause has been litigated for approximately 10 years; Piquette has had ample time to obtain the necessary expert testimony. We agree with the trial court that this record contains no genuine issue of material fact and that defendants are entitled to judgment as a matter of law.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.