THOMAS E. ROBERTS, DOING BUSINESS AS TOM ROBERTS
TRUCKING, APPELLEE, V. WEBER & SONS, CO., A NEBRASKA
CORPORATION, APPELLANT.

533 N.W.2d 664

Filed June 23, 1995.   No. S–93–353.

Jefferson Downing, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellant.

Carl J. Sjulin, of Rembolt Ludtke & Berger, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Thomas E. Roberts, doing business as Tom Roberts Trucking, brought this negligence action based on the doctrine of res ipsa loquitur against Weber & Sons, Co. (Weber), for damages suffered when a semi-tractor trailer driven by Roberts collided with several cattle owned and controlled by Weber near the intersection of Nebraska Highway 6 and Saline County Road 1300. A jury awarded Roberts $18,125.71. Weber appealed, and the Nebraska Court of Appeals, in a memorandum opinion, reversed the verdict and ordered the action dismissed, holding that the district court should have granted Weber's motion for directed verdict because res ipsa loquitur was inapplicable to the facts of the instant case. We granted Roberts' petition for further review, and we now reverse the Court of Appeals' decision.

## I. FACTUAL BACKGROUND

### 1. ACCIDENT

Roberts is the owner and operator of Tom Roberts Trucking. During the early morning hours of October 23, 1991, Roberts was hauling a load of feed salt from Hutchinson, Kansas, to Fort Dodge, Iowa. Though it was still dark outside, the weather was dry and clear. Roberts' route took him through the town of Fairbury, Nebraska, where he got onto state Highway 15. Roberts took Highway 15 straight north until he reached a stop sign at the intersection of Highway 15 and Highway 6. Roberts turned right onto Highway 6. From the point where he entered upon Highway 6, Roberts testified that the road was level and flat for a short distance until he reached a railroad overpass. The railroad overpass consisted of a bridge which inclined and then angled down onto a level stretch of road. Roberts testified that as he crossed over the bridge and leveled out at the bottom, he saw the eyes of several cattle reflected in his low-beam

headlights. The evidence indicated that approximately 100 to 175 cattle were present on the highway. Roberts slammed on the brakes, but the semi struck four of the cattle before it came to a halt.

The cattle were owned by and under the exclusive management and control of Weber. Evidence adduced at trial indicated that the cattle escaped from "pen #7," which was located near the highway on Weber's farm. Roberts claimed that the cattle escaped through "gate #1" in pen #7. According to Weber, the cattle in pen #7 pressed up against gate #1 and broke the top hinge of that gate. The bottom hinge allegedly remained intact, as did the chain securing the side of gate #1 opposite the hinged side. Weber theorized that when the top hinge broke, the gate pivoted outward at enough of an angle to allow the cattle to crawl over the gate. Exhibits entered into evidence in the form of photographs did not show any stress or damage to the bottom hinge or to the gate itself.

Weber testified that pen #7 was constructed of $2^5/8$-inch steel pipe sitting in concrete with a $2^1/4$-inch top rail and a "sucker rod" welded on the inside to the pen. Weber's uncontradicted testimony reflected that of the three types of commonly used fence material—barbed wire, electric wire, and steel pipe— steel pipe was the most expensive and most secure.

Greg Sherwood, who worked for Weber as a "pen rider," also testified at trial. Sherwood stated that as a pen rider, it was his duty to ride through the cattle each day and check their health, and to check the fences and gates to make sure the cattle were secured in their pens. Sherwood testified that when he checked the pens on October 22, the day prior to the accident, pen #7 was secure.

## 2. TRIAL

In his amended petition, Roberts sought damages for property damage to his semi, towing charges, and downtime caused by the alleged negligence of Weber. Roberts alleged res ipsa loquitur as his sole basis for showing negligence on the part of Weber. The case was tried to a jury in the district court for Saline County. The district court submitted the issue of res ipsa loquitur to the jury. The jury returned a verdict in favor of

Roberts and awarded Roberts $18,125.71 in damages.

### 3. COURT OF APPEALS' DECISION

Weber appealed to the Nebraska Court of Appeals, which reversed the verdict and ordered the case dismissed in a memorandum opinion issued January 23, 1995. The Court of Appeals held that res ipsa loquitur was inapplicable to cases where cattle that escaped from a pen caused an accident, based on this court's holding in *Dizco, Inc. v. Kenton*, 210 Neb. 141, 313 N.W.2d 268 (1981), wherein we held that livestock owners merely owed a duty of ordinary care to travelers using abutting highways, and on the Court of Appeals' finding that "cows escaping from their pen and appearing on a public highway is not so unusual in this state that such would ordinarily not occur in the absence of negligence." Roberts successfully petitioned this court for further review.

## II. ASSIGNMENTS OF ERROR

Roberts contends that the Court of Appeals erred in (1) concluding, as a matter of law, that res ipsa loquitur cannot be utilized to establish the liability of an owner of escaped livestock involved in a collision with a motor vehicle on a highway; (2) holding that the use of res ipsa loquitur requires a finding of negligence; and (3) holding that res ipsa loquitur is inapplicable to all escaped–livestock cases.

## III. STANDARD OF REVIEW

In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is. entitled to every reasonable inference deducible from the evidence. *Holman v. Papio–Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994); *Bradley v. Hopkins*, 246 Neb. 646, 522 N.W.2d 394 (1994); *Terry v. Duff*, 246 Neb. 524, 519 N.W.2d 550 (1994).

Roberts' assignments of error present a question of law. Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the

inferior court. *Ruch v. Conrad*, 247 Neb. 318, 526 N.W.2d 653 (1995).

## IV. ANALYSIS

The primary issue presented by Roberts is whether the district court properly applied the doctrine of res ipsa loquitur to the facts of the instant case. This court has not previously determined whether res ipsa loquitur applies to cases involving the collision of a vehicle with escaped livestock on a public road.

### 1. GENERAL RES IPSA LOQUITUR PRINCIPLES

In a conventional negligence case, the mere occurrence of an accident which causes an injury and does damage does not create a presumption of negligence or authorize an inference of negligence. *Kliewer v. Wall Constr. Co.*, 229 Neb. 867, 429 N.W.2d 373 (1988). Res ipsa loquitur is a qualification of the general rule that negligence is not to be presumed. *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954). The doctrine of res ipsa loquitur is not a matter of substantive law, but, as a form of circumstantial evidence, is a procedural matter. *Harvey v. Metropolitan Utilities Dist.*, 246 Neb. 780, 523 N.W.2d 372 (1994); *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992). If res ipsa loquitur applies, an inference of a defendant's negligence exists for submission to the fact finder, which may accept or reject the inference in the factual determination of whether the defendant is negligent. *Harvey v. Metropolitan Utilities Dist., supra*; *Brown v. Scrivner, Inc.*, 241 Neb. 286, 488 N.W.2d 17 (1992).

In order that the doctrine of res ipsa loquitur may be invoked, it must be shown that the occurrence is one which would not, in the ordinary course of things, happen in the absence of negligence; the instrumentality which produces the occurrence is under the exclusive control and management of the alleged wrongdoer; and there is an absence of explanation by the alleged wrongdoer. *Harvey v. Metropolitan Utilities Dist., supra.*

## 2. NEBRASKA LAW REGARDING RES IPSA LOQUITUR AND DOMESTIC ANIMALS

As noted above, this court has never answered the question of whether res ipsa loquitur applies to cases where a vehicle collides with escaped livestock on a public road. However, the U.S. Court of Appeals for the Eighth Circuit, applying Nebraska law, did address that issue in *Nuclear Corporation of America v. Lang*, 480 F.2d 990 (8th Cir. 1973). In affirming the federal district court's decision to apply res ipsa loquitur to the facts therein, the *Lang* court stated:

> By invoking *res ipsa loquitur* . . . the Court necessarily concluded that unattended animals do not usually escape their enclosures unless someone was negligent, a conclusion which is supported by an abundance of authority. [Citations omitted.] Embodied within that conclusion is an expression of judicial attitude with respect to the *high standard of care* owed highway travellers by abutting livestock owners. [Citation omitted.] *The higher the standard of care, the more compelling is the inference that someone was negligent.*

(Emphasis supplied.) *Id.* at 993.

The Eighth Circuit in *Lang* determined that under Nebraska law, livestock owners whose property abutted public highways owed travelers using those highways a higher standard of care than normal, and rested its holding that res ipsa loquitur applied to these cases in part on that determination. However, in *Dizco, Inc. v. Kenton*, 210 Neb. 141, 313 N.W.2d 268 (1981), this court expressly held that such livestock owners owed merely a duty of *ordinary care* to travelers using abutting highways. Therefore, the holding in *Lang* was based, at least in part, on a misreading of Nebraska law.

In the case at bar, the Court of Appeals noted the flaw in the reasoning in *Lang* and held, inter alia, that since our prior decisions established that reasonable minds could differ on whether negligence caused a domestic animal to escape its confines, res ipsa loquitur was inapplicable to such cases. See, *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969); *Countryman v. Ronspies*, 180 Neb. 76, 141 N.W.2d 425 (1966); *Traill v. Ostermeier*, 140 Neb. 432, 300 N.W. 375

(1941). Accord, *Wilson v. Rule*, 169 Kan. 296, 219 P.2d 690 (1950). The Court of Appeals' reasoning in this respect was incorrect, because res ipsa loquitur can apply in escaped-livestock cases even where the owner of the animal is held to only an ordinary standard of care. See, e.g., *Mitchell v. Ridgway*, 77 N.M. 249, 421 P.2d 778 (1966).

However, the Court of Appeals articulated an alternative reason for prohibiting the use of res ipsa loquitur in the instant case: The Court of Appeals found that cattle and other domestic animals may escape from adequately constructed confines without negligence and that cows' escaping from their pen and appearing on a public highway is not so unusual that such an occurrence would not ordinarily occur in the absence of negligence.

Courts in a number of other jurisdictions have addressed the issue presented in the instant case, and those courts are nearly evenly split with regard to the result. See, generally, Annot., 29 A.L.R.4th 466-70 (1984). For courts applying res ipsa loquitur, see, *O'Connor v. Black*, 80 Idaho 96, 326 P.2d 376 (1958); *Loeffler v. Rogers*, 136 A.D.2d 824, 523 N.Y.S.2d 660 (1988); *Watzig v. Tobin*, 292 Or. 645, 642 P.2d 651 (1982); *Scanlan v. Smith*, 66 Wash. 2d 601, 404 P.2d 776 (1965). See, also, *Anderson v. McCarty*, 519 So. 2d 324 (La. App. 1988), *writ denied* 521 So. 2d 1155 (not expressly applying res ipsa loquitur, but holding that where a cow causes damages in a collision with an automobile, courts will presume negligence of the owner of the livestock). For courts refusing to apply res ipsa loquitur, see, *Vanderwater v. Hatch*, 835 F.2d 239 (10th Cir. 1987) (applying Utah law); *Barnes v. Frank*, 28 Colo. App. 389, 472 P.2d 745 (1970); *Taylor Bros., Inc. v. Sork*, 169 Ind. App. 279, 348 N.E.2d 42 (1976); *Wilson v. Rule, supra*; *Walborn v. Stockman*, 10 Kan. App. 2d 597, 706 P.2d 465 (1985); *Hughes v. W & S Construction Company*, 196 So. 2d 339 (Miss. 1967); *Reed v. Molnar*, 67 Ohio St. 2d 76, 423 N.E.2d 140 (1981); *Brauner v. Peterson*, 16 Wash. App. 531, 557 P.2d 359 (1976) (apparently contradicting *Scanlan v. Smith, supra*).

### 3. HOLDING

We hold that the Court of Appeals erred in finding that res

ipsa loquitur is inapplicable to all escaped-livestock cases. As noted above, res ipsa loquitur is a procedural, not substantive, doctrine. As such, res ipsa loquitur merely provides an evidentiary presumption which allows the jury to infer negligence on the part of the defendant when the facts of the case indicate that the injury sustained by the plaintiff would not have occurred but for the negligence of the defendant. Depending on the factual situation presented in certain cases involving escaped livestock, it might be proper for the trial court to instruct the jury regarding res ipsa loquitur. In order to determine whether the instant action is such a case, we must analyze each element of the doctrine.

### (a) First Element

In order to invoke res ipsa loquitur, the plaintiff must first prove that the occurrence is one which would not, in the ordinary course of things, happen in the absence of negligence. The uncontradicted evidence indicated that pen #7 was constructed of the sturdiest and most expensive materials. Pen #7 consisted of $2^5/8$-inch steel pipe sitting in concrete with another steel rod welded on the inside of the pen. When pen #7 was inspected the day before the accident, everything was secure. We hold that Roberts satisfied the first element of res ipsa loquitur because cattle would not ordinarily escape what was characterized by Weber as a secure, state-of-the-art cattle pen in the absence of negligence.

### (b) Second Element

The second element of res ipsa loquitur requires the plaintiff to prove that the instrumentality which produced the occurrence was under the exclusive control and management of the defendant. Weber conceded that Roberts satisfied the second element.

### (c) Third Element

Weber contends that even if Roberts satisfied the first two elements of res ipsa loquitur, Weber still must prevail because Roberts failed to prove the third element of the doctrine—the absence of an explanation by Weber as to how the cattle escaped. Weber argues that it offered direct evidence that the

cattle escaped from pen #7 when the top hinge on gate #1 broke, allowing the cattle to crawl over gate #1. However, Roberts presented evidence regarding the condition of the gate, the bottom hinge, and the chain securing gate #1 from which the jury could have concluded that Weber's explanation was not credible.

The credibility of Weber's explanation regarding how the cattle escaped from pen #7 constituted a question of fact for the jury. It is obvious from the verdict that the jury did not believe Weber's explanation. Where the evidence is conflicting, an appellate court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong. *Lincoln Branch, Inc. v. City of Lincoln*, 245 Neb. 272, 512 N.W.2d 379 (1994). From our review of the record, we cannot say that the jury was clearly wrong in its determination.

## V. CONCLUSION

The Court of Appeals erred in holding that res ipsa loquitur is inapplicable to all escaped–livestock cases. There are certain factual situations, as evidenced by the case at bar, wherein livestock ordinarily would not escape onto a public highway in the absence of some negligence. The decision of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals with orders to reinstate the jury's verdict in favor of Roberts.

REVERSED.