MICHAEL L. HARRISON, APPELLANT, V. JAMES J. SEAGROVES AND NEBRASKA BY-PRODUCTS, INC., A NEBRASKA CORPORATION, APPELLEES.

549 N.W.2d 644

Filed July 5, 1996. No. S-94-861.

496

J. Blake Edwards and Robert B. Reynolds, of McGinley, Lane, Mueller, O'Donnell & Reynolds, P.C., and Robert E. Roeder, of Baskins & Roeder, for appellant.

Stephen W. Kay, of Kay & Kay, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

Plaintiff-appellant, Michael L. Harrison, filed this personal injury action against defendants-appellees, James J. Seagroves and Nebraska By-Products, Inc. (By-Products), alleging negligence and seeking damages for the personal injuries Harrison sustained when his motorcycle collided with By-Products' sanitary-waste truck on June 22, 1991. Both parties moved for summary judgment. The district court granted summary judgment in favor of the appellees and dismissed Harrison's petition. The Nebraska Court of Appeals affirmed. We granted Harrison's subsequent petition for further review.

Harrison assigns a single error: The Court of Appeals and the district court erred in holding that Harrison's negligence was more than slight as a matter of law and that the appellees' negligence, if any, was less than gross as a matter of law. Since we find that genuine issues of material fact exist, we reverse, and remand for a new trial.

The accident occurred on U.S. Highway 30, approximately 1 mile west of the North Platte airport. At the location of the accident, Highway 30 is a level, two-lane paved road with only a slight curve in the road. It contains no restrictions on pass-

ing in either direction. At the time of the accident, the road surface was dry and visibility was unlimited.

Located adjacent to the south side of Highway 30 is a truck weigh station. The weigh station contains a crescent-shaped driveway connected to Highway 30, with an entrance at each end of the driveway. Westbound traffic turns left across the eastbound lane into the east entrance at an angle greater than 90 degrees, and then exits the station at a point farther west onto Highway 30. Eastbound traffic turns right into the station via an entry lane at the west entrance at an angle greater than 90 degrees, and exits at a point farther east onto Highway 30.

On June 22, 1991, at approximately 12:40 p.m., Seagroves was westbound on Highway 30, driving a truck owned by By-Products. At that time, Harrison was also traveling westbound on his motorcycle. Seagroves attempted to turn left into the west entrance of the weigh station. Harrison was in the south lane of Highway 30, overtaking vehicles behind the By-Products truck and attempting to pass the truck. Harrison's motorcycle collided with the left front wheel of the truck as the truck was turning left. Harrison was thrown from his motorcycle and sustained injuries.

On May 24, 1993, Harrison filed an amended petition against Seagroves and Seagroves' employer, By-Products, seeking damages for the injuries Harrison sustained as a result of the alleged negligence of the appellees. In their amended answer filed May 27, 1994, the appellees alleged that Harrison's negligent acts or omissions were the proximate cause of the accident and that Harrison was contributorily negligent in a degree more than slight.

Both Harrison and the appellees filed motions for summary judgment. On July 17, 1994, a hearing was held on these motions. At this hearing, the court admitted into evidence the depositions of Seagroves, Harrison, three witnesses, and the investigating state trooper.

Seagroves testified in his deposition that he was heading westbound on Highway 30. As he approached the east entrance of the weigh station, he slowed down and turned on his left-turn signal, intending to turn left into this entrance. Seagroves' rear turn signals were inset and located underneath

the cargo box toward the center of the rear of the truck. The truck also had turn signal indicators on both sides of the hood.

Seagroves noticed a semi-trailer truck on the weigh station's scale, facing toward him. Seagroves therefore decided to proceed to the west entrance rather than the east entrance, thinking that the west entrance was the proper entrance. It was the first time he had entered this weigh station.

Seagroves testified that he slowly continued westbound to the west entrance, with his turn signal remaining on. Seagroves testified that no longer than a minute prior to turning, he looked in his side-view mirror and saw only a blue car and a red car behind the blue car, but did not see a motorcycle.

To turn into the west entrance of the station, Seagroves was required to turn back in a southeasterly direction into the entrance, so as to turn at an angle sharper than 90 degrees. He testified that he was traveling at approximately 5 miles per hour at the time he was turning.

Seagroves then testified that after he began his left turn, he heard a motorcycle accelerate. He testified that he looked at his side-view mirror and saw Harrison's motorcycle begin to pass the red car. Seagroves testified that he attempted to straighten out his truck in order to give the motorcycle room to pass, but the motorcycle collided with his left front tire.

The three witnesses who were deposed were traveling in the two cars behind the truck. The witnesses provided slightly different testimony as to what took place at the scene of the accident.

Jody Ostendorf, who was driving the blue car immediately behind the By-Products truck, testified that at some point between the two entrances, a third car passed her car and the By-Products truck. She testified that she saw in her rearview mirror the motorcycle passing the red car behind her, at a point which she believed was about one-eighth of a mile east of the accident scene. She testified that she then looked ahead and saw the truck just beginning to make a left turn. Ostendorf did not testify as to what rate of speed the motorcycle was traveling.

The other two witnesses, Robert Brannan and Helen Brannan, husband and wife, were traveling in the red car immediately behind Ostendorf's vehicle. They both testified that Harrison passed their car, darted into the westbound lane, and then darted back into the eastbound lane to pass Ostendorf's vehicle and the By-Products truck. They both testified that Harrison was traveling at an excessive rate of speed, but were not sure at what rate of speed he was traveling.

Robert Brannan testified that at the time the motorcycle began to pass his car, his car was approximately 300 to 400 feet behind the truck. Robert Brannan further stated that at the time the truck started to make its left turn, Harrison was already in the eastbound lane, and that at the time the truck began to turn, the motorcycle was not very far behind the By-Products truck.

Helen Brannan testified in her deposition that the truck had already begun its turn prior to Harrison's entering the eastbound lane. However, in an October 9, 1991, interview admitted into evidence as an exhibit to her deposition, Helen Brannan stated that Seagroves started his turn at the same time that the motorcycle pulled out into the eastbound lane. She also testified that the collision occurred at the very south edge of the highway and that Harrison attempted to avoid the collision by veering south.

Harrison testified in his deposition that he had no memory of the accident. He also testified that he disagreed with the reports as to the manner in which he was riding his motorcycle.

On July 21, 1994, the district court granted summary judgment in favor of the appellees and denied Harrison's motion for summary judgment. The court concluded that Harrison's negligence was more than slight as a matter of law and that Seagroves' negligence, if any, was less than gross as a matter of law.

On appeal, the Court of Appeals affirmed. *Harrison v. Seagroves*, 95 NCA No. 51, case No. A-94-861 (not designated for permanent publication). The Court of Appeals first concluded that, when viewing the evidence most favorably to Harrison, Seagroves' conduct was negligent. Specifically, the

Court of Appeals found evidence implying that Seagroves failed to see Harrison in his side-view mirror immediately prior to turning.

The Court of Appeals, however, concluded as a matter of law that Harrison also was negligent. Specifically, the court stated in regard to Harrison's conduct:

> The conclusion to be drawn from this conduct is that Harrison pulled into the eastbound lane of the highway at a rate of speed excessive under the circumstances and was attempting to pass at least two vehicles (the blue car and Seagroves' truck) which had slowed down in order to permit Seagroves to negotiate a left-hand turn. Additionally, Harrison failed to exercise due caution because he was not looking or keeping a proper lookout for the left-hand turn signal given by Seagroves.

*Harrison v. Seagroves*, 95 NCA No. 51 at 46. The Court of Appeals concluded by agreeing with the district court's finding that Harrison's negligence was more than slight and that Seagroves' negligence, if any, was less than gross as a matter of law.

Regarding this court's standard of review, summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lockard v. Nebraska Pub. Power Dist.*, 249 Neb. 971, 546 N.W.2d 824 (1996).

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Lockard v. Nebraska Pub. Power Dist., supra.*

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must

produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Kocsis v. Harrison, supra.* A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996). The opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996).

In the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial to prove the allegations contained in his or her petition. *Roubideaux v. Davenport*, 247 Neb. 746, 530 N.W.2d 232 (1995).

Applying these standards to the facts of this case, we conclude that genuine issues of material fact exist as to the existence of both parties' negligence and the degree of negligence in comparison.

The statute applicable to this cause of action is Neb. Rev. Stat. § 25-21,185 (Reissue 1995), which provides that in a cause of action for negligence accruing before February 8, 1992, the plaintiff's negligence will not bar recovery if his or her negligence is only slight and the defendant's negligence is gross in comparison.

Therefore, in order for the appellees to be entitled to summary judgment in this case, they have the burden of proving, under the facts viewed most favorably to Harrison, that (1) Harrison's contributory negligence was more than slight as a matter of law or (2) Seagroves' negligence was not gross in comparison to Harrison's negligence as a matter of law. See *John v. ∞ (Infinity) S Development Co.*, 234 Neb. 190, 450 N.W.2d 199 (1990). If reasonable minds might draw different conclusions from the facts thus resolved, the issues of negligence and contributory negligence are for the jury. *Parmenter v. Johnson*, 213 Neb. 725, 331 N.W.2d 263 (1983). We find

that several different conclusions can be drawn from the evidence presented in this case.

Regarding Seagroves' alleged negligence, Seagroves testified that he is not certain as to how far in advance of initiating his left turn he checked his side-view mirror. This court has held that a left-turning motorist has the duty not to turn unless and until the movement can be made with reasonable safety. *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995). One turning left must exercise reasonable care under all of the circumstances. *Id.*

> The exercise of reasonable care includes the requirement that a left-turning motorist maintain a proper lookout by looking both to the front and to the rear before executing a left turn between intersections. [Citation omitted.] ". . . The observations must be made immediately before the impending movement; otherwise . . . the observation would be completely ineffective for the accomplishment of the purpose intended."

*Id.* at 188, 525 N.W.2d at 635.

If a driver who is turning left across a highway fails to look at a time when looking would have been effective, he or she is negligent as a matter of law. See *id.* However, if the driver looks but does not see an approaching automobile because of unusual circumstances, the question of the driver's negligence is usually for the jury. See *id.*

Seagroves essentially testified that he looked in his side-view mirror at some point before his turn, but no longer than a minute prior to the turn, and saw only two cars. He began to turn, heard the motorcycle accelerate, looked in his side-view mirror, and saw the motorcycle begin to pass the second car behind him. He stated that he never saw the motorcycle before this time.

However, testimony and statements of the witnesses indicate that Harrison may already have been in the eastbound lane before Seagroves began to turn. One could reasonably infer from Robert Brannan's testimony that the motorcycle passed his car, moved back into the westbound lane, then moved back into the eastbound lane to pass the Ostendorf vehicle. Then, as Harrison was passing Ostendorf, Seagroves began his left

turn into the weigh station. This directly conflicts with Seagroves' statements that he saw the motorcycle passing Brannan's vehicle after he had already begun to turn.

Moreover, Ostendorf testified that a car passed Seagroves' truck at a point between the two entrances to the weigh station. Seagroves, however, makes no mention of this car when testifying as to what happened from the time he approached the weigh station and turned on his left-turn signal to the point where he began to make his left turn.

We find that reasonable minds could draw different conclusions from this evidence. For example, one could conclude that Seagroves failed to look when it would have been effective to do so. On the other hand, one could possibly conclude that Seagroves' failure to see Harrison's motorcycle was due to unusual circumstances obstructing Seagroves' view.

In regard to the issue of Harrison's contributory negligence, a plaintiff is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause. *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995). The Court of Appeals concluded that Harrison was traveling at an excessive rate of speed, such as to impede his ability to avoid colliding with the By-Products truck.

It is a general rule that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway, at any time, at a speed or in such manner that it cannot be stopped or its course be changed in time to avoid a collision with an object or obstruction discernible within his range of vision in the direction he is traveling. *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986).

The speed of a motor vehicle is excessive if it is found to be unreasonable or imprudent under the existing circumstances, even though it may not exceed the applicable statutory limits. *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995). Moreover, " '[a] motorist overtaking and passing another car must exercise vigilance commensurate with the surrounding conditions.' " *Id.* at 189, 525 N.W.2d at 636.

We find the determination of whether Harrison's speed was unreasonable under the circumstances in this case to be a determination for the jury. See, *Huntwork v. Voss, supra*; *Davis v. Phillips*, 215 Neb. 184, 337 N.W.2d 754 (1983). Two witnesses had difficulty in ascertaining the approximate speed at which Harrison was traveling, and at the same time those witnesses made conclusive statements that they believed the speed was excessive. The other witness could not determine how fast Harrison was traveling.

In this case, when viewing the evidence in a light most favorable to Harrison, a genuine issue of material fact exists as to whether Harrison exercised vigilance commensurate with the conditions surrounding the accident. Seagroves signaled to turn into the east entrance, which was the proper entrance for westbound trucks to enter, but then proceeded down the highway to the west entrance. After Seagroves passed the east entrance, a car entered the eastbound passing lane and safely passed the truck. In order to turn into the west entrance, Seagroves was required to turn back in a southeasterly direction to enter the station. This was not the normal entrance for westbound trucks. These facts reflect the confusing nature of the conditions surrounding the accident.

Moreover, the evidence indicates that the truck's rear turn signals were inset toward the center of the truck. When viewed in Harrison's favor, the evidence also indicates that Harrison was already in the passing lane prior to the time that Seagroves initiated his turn, that the collision occurred at the south edge of the highway, and that Harrison attempted to avoid the collision by veering south. Based on these circumstances, we cannot conclude that as a matter of law Harrison was negligent.

In conclusion, we find that the evidence in this case is such that reasonable minds could draw different conclusions and inferences from the evidence as to the negligence of the appellees and the contributory negligence of Harrison, and as to the degree thereof, when each is compared with the other. In such a case, the issues must be submitted to the jury. See *Schmidt v. Orton*, 190 Neb. 257, 207 N.W.2d 390 (1973).

For the reasons stated above, we reverse the decision of the Court of Appeals and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.