MARY CHISM, APPELLANT, V. ALLAN S. CAMPBELL, M.D., ET AL., APPELLEES.

553 N.W.2d 741

Filed October 11, 1996. No. S-94-1065.

922

Larry R. Demerath, of Demerath Law Offices, for appellant.

Mark E. Novotny and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellee Campbell.

Edward F. Noethe, of Sodoro, Daly & Sodoro, for appellee Sandra Landmark, M.D.

Michael J. Mooney and John A. Svoboda, of Gross & Welch, P.C., for appellee Midlands Community Hospital.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ., and RIST, D.J.

CONNOLLY, J.

Mary Chism brought this medical malpractice action based on the doctrine of res ipsa loquitur against Allan S. Campbell, M.D.; Sandra Landmark, M.D.; and Midlands Community

Hospital for injuries Chism allegedly suffered to her tooth as a result of having a surgical operation to remove her gallbladder. The district court for Sarpy County granted a summary judgment for each appellee, holding the doctrine of res ipsa loquitur to be inapplicable. We conclude that given the underlying facts of this case, the doctrine of res ipsa loquitur is not applicable and there is no genuine issue as to any material fact. We therefore affirm.

## BACKGROUND

### SURGERY

On April 24, 1991, Mary Chism was admitted to Midlands Community Hospital for a cholecystectomy, which is the surgical removal of the gallbladder. The surgery was performed by Dr. Allan S. Campbell, a general surgeon. Throughout the operation, Chism was unconscious as the result of a general anesthesia. Dr. Sandra Landmark, a board-certified anesthesiologist, and Kay Timm, a certified registered nurse anesthetist, were responsible for applying the anesthesia to Chism.

General anesthesia was administered to Chism using a process called endotracheal intubation. This procedure requires the insertion of a tube into a patient's trachea, through which tube anesthesia is administered. As a consequence of using endotracheal intubation, various pieces of equipment were placed in Chism's mouth. In her deposition, Chism testified that prior to her surgery an anesthesiologist asked her if she had any loose teeth, partials, dentures, or capped teeth, and the location of all her capped teeth. Chism further acknowledged that she was told a crown could be knocked loose and that therefore all crown locations had to be ascertained. Landmark stated in her affidavit that she informed Chism of the risk of damage to her teeth prior to the intubation procedure, although Chism denies receiving such information.

Chism stated in her deposition that on April 25, 1991, the day after the surgery, she noticed that the inside of her lower lip was "cut up pretty bad" and that a tooth was loose on the upper left side of her mouth. Chism further testified that she visited her dentist, Dr. F.H. Tafoya, on May 6, and was

informed that her "No. 11" tooth was broken inside the gum area. Tafoya recommended a bridge, but attempted at that time to affix the crown to the tooth. Due to the unsuccessful results of this procedure, Chism had further work done on her tooth by Tafoya. At her deposition, Chism stated that her tooth eventually had to be removed, along with some bone, in 1992.

## Lawsuit

In her amended petition, Chism sought damages from Campbell, Landmark, and the hospital for medical malpractice that allegedly caused damage to her tooth. Chism relied solely on the doctrine of res ipsa loquitur to establish the appellees' negligence. Each appellee moved for summary judgment.

A hearing was held in the district court on June 23, 1994, for the summary judgment motions of Landmark and the hospital. Both Landmark and the hospital offered into evidence signed affidavits from Landmark and Dr. James W. Chapin, a board-certified anesthesiologist. In their affidavits, both Landmark and Chapin stated that in their professional opinions, there is an "inherent risk" that a patient's teeth may be damaged when using general anesthesia. They further opined that damage to the teeth occurs in a "fixed percentage" of patients, even when the appropriate standard of care has been met by all persons in the operating room. Chism objected to the use of these affidavits on the ground of insufficient foundation for the statements that there is always an "inherent risk" that a "fixed percentage" of persons will suffer damage to the teeth during surgery when using general anesthesia. The district court overruled the evidentiary objection and admitted the affidavits.

Landmark and the hospital also produced an affidavit from Timm, the nurse anesthetist who assisted in administering the anesthesia to Chism. In her affidavit, Timm stated that certain appliances must be inserted into a patient's mouth prior to administering general anesthesia by endotracheal intubation. Timm further stated that there is always an inherent risk of damage to a patient's teeth while under general anesthesia even when the appropriate standard of care is met, because it is impossible to know if or when the patient will bite down on

the mouthpieces. According to Timm, there is no manner in which to prevent this occurrence. The affidavits of Landmark, Chapin, and Timm stated that the required standard of care for administering general anesthesia for a cholecystectomy was met or exceeded.

In opposition to the motions for summary judgment, Chism produced an affidavit from her dentist, Tafoya. In his affidavit, Tafoya stated that in his opinion, as a practicing dentist, Chism's tooth would not have been damaged during her gallbladder surgery "unless there was [sic] some extraordinary circumstances." In addition, Tafoya stated that he was not aware of some " 'fixed percentage' " of patients who might receive injury to their teeth while under general anesthesia.

The affidavit of Chism was also offered at the summary judgment hearing. According to her affidavit, Chism stated that her mouth was not cut and her tooth was not damaged prior to her surgery at the hospital. Chism further stated that from her lifetime experiences, she would not expect to receive a broken tooth or to have her mouth damaged as a result of instruments being placed in her mouth by an anesthesiologist.

Campbell's motion for summary judgment was heard by the district court on August 10, 1994. In support of his motion, Campbell submitted his own affidavit, albeit similar to the affidavits of Landmark and Chapin, wherein he stated that it was his professional opinion that there is always an inherent risk of damage to the teeth of a fixed percentage of patients who receive general anesthesia, even if all persons involved adhered to the proper standard of care. Campbell also stated that in providing the medical services as a surgeon to Chism, he met or exceeded the appropriate standard of care for a cholecystectomy. In opposition to Campbell's motion, Chism offered the same evidence offered against Landmark and the hospital in the June 23, 1994, hearing; namely the affidavits of Tafoya and Chism.

The district court sustained the summary judgment motions for Landmark and the hospital on July 14, 1994, and for Campbell on August 10. Chism appeals the district court's decision.

## ASSIGNMENTS OF ERROR

Chism assigns four errors, which can be summarized as follows: (1) The district court erred in admitting evidence over Chism's objections, (2) the district court erred in finding that the doctrine of res ipsa loquitur did not apply, and (3) the district court erred in sustaining the appellees' motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Boyd v. Chakraborty, ante* p. 575, 550 N.W.2d 44 (1996); *Harrison v. Seagroves, ante* p. 495, 549 N.W.2d 644 (1996).

A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *Harrison v. Seagroves, supra; O'Connor v. Kaufman, ante* p. 419, 550 N.W.2d 902 (1996).

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Torrison v. Overman, ante* p. 164, 549 N.W.2d 124 (1996); *Ford Motor Credit Co. v. All Ways, Inc.*, 249 Neb. 923, 546 N.W.2d 807 (1996).

## ANALYSIS

### EVIDENTIARY RULING

Chism first alleges that the district court erred in overruling her foundational objections to the affidavits of Landmark and Chapin. In particular, she alleges that there was no foundation for the statements that there is an "inherent risk" of damage to the teeth for a "fixed percentage" of persons who

undergo surgery using general anesthesia. Chism's main contention appears to be that Landmark and Chapin are not qualified to make such assertions without supporting evidence.

In summary judgment proceedings, a supporting affidavit may be used if it is based on personal knowledge, sets forth facts that would be admissible in evidence, and is made by a person competent to testify on the matter in issue. Neb. Rev. Stat. § 25-1334 (Reissue 1995); *Young v. First United Bank of Bellevue*, 246 Neb. 43, 516 N.W.2d 256 (1994). Examination of the Landmark and Chapin affidavits reveals that both physicians are board-certified anesthesiologists and are familiar with the appropriate standard of care for an anesthesiologist in the Papillion, Nebraska, area. The affidavits further show that both physicians were familiar with the medical care given to Chism at the hospital. In light of these facts, it is apparent that both Landmark and Chapin are thoroughly competent to testify as to possible complications of anesthetic procedures. Chism's objection as to foundation was therefore properly overruled.

## RES IPSA LOQUITUR

Chism next asserts that the district court erred in not applying the doctrine of res ipsa loquitur. In particular, Chism claims that the general experience and observation of mankind teaches that her injury would not be expected without negligence.

We have recently reexamined the contours of res ipsa loquitur, noting that it is an exception to the general rule that negligence cannot be presumed. *Roberts v. Weber & Sons, Co.*, 248 Neb. 243, 533 N.W.2d 664 (1995). Res ipsa loquitur (literally meaning "the thing speaks for itself") is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder, where it may be accepted or rejected. See, *id.*; *Harvey v. Metropolitan Utilities Dist.*, 246 Neb. 780, 523 N.W.2d 372 (1994). Res ipsa loquitur allows this inference of negligence because the inference is probable and more plausible than any other explanation propounded. *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991).

The crucial question in any res ipsa loquitur situation is whether the doctrine applies at all. In *Roberts v. Weber & Sons, Co., supra*, this court noted the three essential elements for the res ipsa loquitur doctrine to apply:

> In order that the doctrine of res ipsa loquitur may be invoked, it must be shown that the occurrence is one which would not, in the ordinary course of things, happen in the absence of negligence; the instrumentality which produces the occurrence is under the exclusive control and management of the alleged wrongdoer; and there is an absence of explanation by the alleged wrongdoer.

*Id.* at 247, 533 N.W.2d at 667-68.

For medical malpractice cases brought under the res ipsa loquitur doctrine, we have held that negligence may be inferred in three situations without affirmative proof:

> " '(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.' "

*Swierczek v. Lynch*, 237 Neb. at 476, 466 N.W.2d at 517 (quoting *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969)).

Considering these general principles, we must determine whether there is a genuine issue of fact as to whether Chism's alleged injuries would have occurred absent some negligent act. In reaching our conclusion, we view the evidence in a light most favorable to Chism, for she is the party against whom summary judgment was granted. See, *Torrison v. Overman, ante* p. 164, 549 N.W.2d 124 (1996); *Ford Motor Credit Co. v. All Ways, Inc.*, 249 Neb. 923, 546 N.W.2d 807 (1996).

## Occurrence of Injury in Absence of Negligence

We begin by noting that the first element of res ipsa loquitur requires a plaintiff to show that the injury incurred is one which would not, in the ordinary course of events, happen in the absence of negligence. *Roberts v. Weber & Sons, Co., supra.*

The affidavits of the appellees essentially state that there always exists an inherent risk that a patient under general anesthesia may suffer damage to the teeth, even if the proper standard of care is adhered to. The evidence proffered by the appellees further states that it is impossible to say if or when a patient will bite down on the mouthpieces used with an endotracheal intubation and that there is no manner in which to prevent such an occurrence. Finally, the affidavits offered by the appellees state that the proper standard of care was met or exceeded during Chism's surgery.

The affidavits offered by Chism do not refute these statements. As noted above, Chism's dentist, Tafoya, did not state that there is no inherent risk that a fixed percentage of anesthetized persons will suffer damage to the teeth; rather, he simply stated that he has "not become aware" of any such fixed percentage. Furthermore, Tafoya's opinion that Chism should not have suffered damage to her tooth unless there were some "extraordinary circumstances" in no way negates the statements in the appellees' affidavits that the proper standard of care was met or exceeded. In addition, Chism offered no evidence or affidavit refuting Timm's statements that there is no way to prevent an unconscious patient from biting down on the mouthpieces used with an endotracheal intubation. Since these facts were not contradicted, we treat them as undisputed for purposes of summary judgment. See, *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996); *Raskey v. Michelin Tire Corp.*, 223 Neb. 520, 391 N.W.2d 123 (1986).

Because the uncontroverted facts in this case establish that a fixed percentage of patients under general anesthesia will suffer damage to the teeth even in the absence of negligence and that there is simply no manner in which to prevent such an occurrence, we hold that the doctrine of res ipsa loquitur is inapplicable as a matter of law. See, e.g., *Hughes v. Hastings*,

225 Tenn. 386, 469 S.W.2d 378 (1971) (res ipsa loquitur inappropriate when record shows damage to patient's tooth while plaintiff was under general anesthesia could not have been prevented); *Tappe v. Iowa Methodist Medical Center*, 477 N.W.2d 396 (Iowa 1991) (res ipsa loquitur cannot apply when all experts agree that stroke occurs in fixed percentage of all bypass surgeries even in absence of negligence); *Piquette v. Midtown Anesthesia Assoc.*, 192 Ill. App. 3d 219, 548 N.E.2d 659 (1989) (res ipsa loquitur held not to apply where defendants' affidavits establish that broken teeth are risk of laryngoscopic procedure); *Perin v. Hayne*, 210 N.W.2d 609 (Iowa 1973) (res ipsa loquitur held inapplicable where nerve injury from procedure used is inherent risk even when due care is used).

Chism relied solely upon the doctrine of res ipsa loquitur in bringing this action. Because we hold the doctrine to be inapplicable in light of the undisputed facts, summary judgment was appropriately granted in favor of the appellees. See *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992).

## CONCLUSION

For the reasons discussed above, we hold that the district court was correct in concluding there was sufficient foundation for statements found in the affidavits of Landmark and Chapin and in finding the doctrine of res ipsa loquitur to be inapplicable. Because Chism's sole theory of recovery was under this doctrine, the granting of summary judgment was correct.

AFFIRMED.

FAHRNBRUCH, J., not participating.

WHITE, C.J., dissenting.

I agree with the majority that the initial question in any res ipsa loquitur case is whether it is appropriate to apply the doctrine. However, I disagree with the majority's conclusion that, as a matter of law, res ipsa loquitur is not applicable in this particular case.

This court has addressed hospital liability under the res ipsa loquitur doctrine on only two occasions. See, *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991); *McCall v. St.*

*Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969). *Swierczek* is of particular interest in this case. In *Swierczek*, the plaintiff brought negligence and res ipsa loquitur actions based on nerve injuries she had allegedly suffered as a result of dental surgery. The plaintiff named several doctors, a nurse anesthetist, and a hospital as defendants. At various times throughout the litigation, the defendants moved for summary judgment. The district court sustained a doctor's, a nurse's, and the hospital's motions for summary judgment. The plaintiff appealed.

According to this court's analysis in *Swierczek*, for res ipsa loquitur to apply, the plaintiff is not obligated to prove the exact manner in which he or she was injured or the precise act or event which led to his or her injury. Negligence may be inferred without definite proof " ' "when the general experience and observation of mankind teaches that the result would not be expected without negligence," ' " 237 Neb. at 476, 466 N.W.2d at 517; it is enough to establish that it is within the common knowledge of a layperson that an individual does not enter the hospital to have her teeth pulled and leave the hospital with damage to nerves in her arms and hands without some type of negligence occurring, *Swierczek, supra*. Reliance on the res ipsa loquitur doctrine in such situations raises an inference of negligence which should be allowed to go to the jury if the facts pled in the petition are supported by ample proof.

The proof offered in support of Chism's action in this case was an affidavit signed by her dentist, Tafoya. To determine whether this affidavit sufficiently supports Chism's allegations for purposes of defending a summary judgment motion, it is essential to assess the contents of the affidavit submitted by Tafoya.

In general medical malpractice cases, an affidavit submitted by a defendant physician, which states that the defendant did not breach the appropriate standard of care, creates a prima facie case of lack of negligence for purposes of summary judgment. *Wagner v. Pope*, 247 Neb. 951, 531 N.W.2d 234 (1995). The burden then shifts to the plaintiff to counter the defendant's evidence with a showing that the defendant had not fol-

lowed the appropriate standard of care. See *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989). See, also, *Smith v. Klebanoff*, 84 N.M. 50, 499 P.2d 368 (N.M. App. 1972) (holding that plaintiffs, in order to defeat summary judgment on basis that doctrine of res ipsa loquitur was applicable, had burden of demonstrating that factual dispute existed as to whether incident was one that does not occur in absence of negligence).

In the instant case, the appellees submitted affidavits stating that there was an inherent risk that any patient during surgery and while under general anesthesia will suffer damage to the teeth. The affidavits also stated that the proper standard of care was met. It can be argued in this case that Tafoya's affidavit refuted these statements. Specifically, Tafoya states that "unless there was [sic] some extraordinary circumstances during surgery, Mrs. Chism should not have received any injuries to her teeth." In viewing this affidavit in the light most favorable to the nonmoving plaintiff, Chism, a reasonable inference can be drawn that such a statement was made for the purpose of establishing that Chism's injuries were caused by unusual circumstances and negligence, and not as a result of ordinary circumstances and care. Tafoya's affidavit sufficiently demonstrated that there is a material question of fact: Were Chism's injuries the result of negligence?

Since a material question of fact existed, the court could not have concluded as a matter of law that the res ipsa loquitur doctrine did not apply. Therefore, the district court erred in granting the appellees' motions for summary judgment.