THE PEOPLE *ex rel.* THE VILLAGE OF ORLAND HILLS, Petitioner-Appellee, v. THE VILLAGE OF ORLAND PARK, Respondent-Appellant.

First District (2nd Division)   No. 1—98—4196

Opinion filed August 1, 2000.

E. Kenneth Friker, Dennis G. Walsh, and Michael T. Jurusik, all of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellant.

John B. Murphey and Judith N. Kolman, both of Rosenthal, Murphey, Coblentz & Janega, of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

This *quo warranto* proceeding was brought by petitioner the Village of Orland Hills (Orland Hills) following competing attempts by Orland Hills and respondent the Village of Orland Park (Orland Park) to annex a group of unincorporated parcels of property (collectively, the subject property). The complaint sought a determination that Orland Hills' annexation of the subject property was valid and that Orland Park's annexation of portions of the subject property was void. The parties filed cross-motions for summary judgment. After hearing the arguments of the parties, the trial court granted Orland Hills' motion for summary judgment, denied Orland Park's cross-motion, and ousted Orland Park from exercising jurisdiction over the subject property. Orland Park now appeals.

Orland Hills is a municipality located in southern Cook County. Orland Park is a municipality located in southern Cook County and northern Will County. The subject property is made up of four separate parcels of land: the Purpura, Duffek, Schwab, and Smith parcels.

The Purpura, Duffek, and Schwab parcels are rectangular in shape and all border 167th Street on their southern end. On the other side of 167th Street is Cook County Forest Preserve property. The Smith parcel is irregular in shape and extends north and west of the Schwab parcel. The subject property and Orland Hills do not share a common boundary. However, the forest preserve land that abuts the southern border of the subject property also abuts the western border of Orland Hills.

The owners of the parcels that make up the subject property commenced voluntary annexation proceedings with Orland Hills in 1995. Pursuant to section 7—1—8 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/7—1—8 (West 1996) (concerning annexation of territory contiguous to a municipality)), the owners of each parcel filed separate annexation petitions and entered into annexation agreements with Orland Hills (the 1995-96 annexation agreements). Orland Hills then adopted annexation ordinances pertaining to the subject property (the 1995-96 annexations). The 1995-96 annexations were later found to be technically flawed in a separate proceeding and are not the subject of this case.

In June 1996, Orland Park published notice that it intended to involuntarily annex the Purpura, Duffek, and Schwab parcels pursuant to section 7—1—13 of the Municipal Code, as well as a parcel immediately south of the Smith parcel (this parcel is referred to in the record as the "southwest parcel"). 65 ILCS 5/7—1—13 (West 1996). Under section 7—1—13, a municipality may forcibly annex unincorporated territory of less than 60 acres which is wholly surrounded by one or more municipalities or other types of property listed in the statute, such as forest preserve district or state property. 65 ILCS 5/7—1—13 (West 1996).

Prior to July 1, 1996, John Daly, the village administrator of Orland Hills, was advised by attorneys for Orland Hills that the 1995-96 annexation proceedings were potentially defective on technical grounds. Daly proceeded to obtain new petitions for voluntary annexation from the owners of the subject property. On July 1, 1996, at approximately 2:15 p.m., Daly brought the new petitions to the Orland Hills village hall (Village Hall) and submitted the petitions to a clerical employee for filing.

On the evening of July 1, 1996, the corporate authorities of Orland Park adopted an ordinance annexing the Purpura, Duffek, and Schwab parcels of the subject property, along with the southwest parcel.

On July 9, 1996, Orland Park commenced a *quo warranto* proceeding against Orland Hills, in which it challenged the 1995-96 an-

nexations by Orland Hills on procedural grounds. On December 12, 1996, by court order, the 1995-96 annexations were found to be deficient for various reasons and were thus declared void and of no legal effect.

On June 18, 1997, the corporate authorities of Orland Hills acted on the petitions filed on July 1, 1996, by adopting ordinances annexing the parcels that made up the subject property to Orland Hills.

Orland Hills then filed the *quo warranto* complaint that is the subject of this action. The complaint sought to have the Orland Park annexation declared void and sought an order ousting Orland Park from jurisdiction over any of the subject property. Orland Hills moved for summary judgment, arguing that Daly's filing of the Orland Hills annexation petitions on July 1, 1996, gave it priority over Orland Park's annexation several hours later on the evening of July 1, 1996. Orland Hills further maintained that Orland Park's annexation was invalid because the property annexed was not "wholly surrounded" as required by statute. Orland Park filed a cross-motion for summary judgment contending, *inter alia*, that its annexation should prevail over Orland Hills annexation because Orland Hills had failed to comply with statutory filing requirements and had abandoned its annexation efforts.

Much of the evidence and argument before the trial court on the cross-motions for summary judgment concerned the filing of the Orland Hills petitions. At the Orland Hills Village Hall, there was a single counter shared by the village clerk, building department, recreation department, and other departments of the Village. Signs above the counter indicated that the counter was for persons who had business with the building department, clerk's office, or recreation department. The open area behind the counter was known as the "general office" or "clerk's office" and was staffed by clerical personnel who were available to handle all problems, questions, and requests for any of the Village's departments. Pursuant to section 7—1—8 of the Municipal Code, which requires that annexation petitions be filed "with the municipal clerk," Daly went to the counter and asked that the petitions be filed on behalf of the owners. 65 ILCS 5/7—1—8 (West 1994). Sharon Richmond, an administrative assistant for the Village's building department, accepted the petitions. According to Richmond, she, along with the other individuals who worked in the general office behind the front counter, had the authority to accept a filing on behalf of the Village clerk's office.

The general office had two manual date stamps. One, which said "Building Department," was typically kept by Richmond on her desk. Richmond accepted the petitions by taking the building department

stamp off of her desk and stamping each petition "Received July 1, 1996, Orland Hills Bldg. Dept." She also initialed each petition.

There was also a stamp that read "Village of Orland Hills" in the office. That stamp was typically kept under the front counter. Various employees testified that there was no hard and fast rule related to stamping or which stamp to use and that they generally did not distinguish between the two stamps. There was no written policy, procedure or guidelines related to the use of the two stamps. At the old village hall, the building department stamp had been kept downstairs where the department was located and the "Village of Orland Hills" stamp had been kept upstairs in the Village clerk's office. Richmond brought the building department stamp with her when the Village moved from the old building to the new.

After accepting the petitions, Richmond prepared a zoning jacket file for the petitions, put the petitions in the file, and placed the file in a file cabinet drawer where petitions requiring public hearings were kept. Richmond also made copies of the petitions for the mayor, village clerk, village administrator, building commissioner, and all of the village trustees. The copies of the petitions were distributed on either July 1 or July 2.

On July 1, 1996, Elaine Hallas was the elected village clerk of Orland Hills. The clerk's position was part-time and paid only $300 per month. Hallas was rarely, if ever, present at the Village Hall during the normal workday and was not responsible for overseeing the day-to-day operation of the clerk's office. Although there was an appointed deputy clerk, none of the employees in the Village Hall, including the deputy clerk, were under Hallas' control. The majority of the duties of the clerk's office were handled by the administrative personnel in the general office. Hallas never received possession of the original annexation petitions but did receive copies.

Full-time deputy village clerk Veronica Griffin handled the day-to-day matters of running the clerk's office. Griffin testified that in her position she handled matters relating to the clerk's office and that employees for one department would sometimes handle duties for another department. Griffin used the stamp bearing the designation "Village of Orland Hills" when stamping documents received as filed for the village clerk. Her reason for doing so was because that stamp was kept right below the counter and was thus easily available.

After hearing the arguments of the parties on their cross-motions for summary judgment, the court granted Orland Hills' motion for summary judgment and denied Orland Park's cross-motion for summary judgment. In so ruling, the court first noted that there were no genuine issues of material fact. The court next noted that public policy

favors voluntary annexation. The court found that the July 1, 1996, filing of the Orland Hills voluntary annexation petitions was in substantial compliance with the statutory requirements of section 7—1—8 and that Orland Park's objections to the filing procedure were trivial. The court found that Orland Hills had not been guilty of any unnecessary and unreasonable delay in acting upon the petitions so as to constitute abandonment and rejected Orland Park's collateral estoppel arguments. Finally, the court found that Orland Park's attempt at annexation was void *ab initio* and that Orland Hills' annexation through the forest preserve was valid. The court's order ousted Orland Park from exercising jurisdiction over the subject property.

■ Orland Park contends that Orland Hills' attempt at annexing the subject property under sections 7—1—1 and 7—1—8 of the Municipal Code was fatally flawed because the subject property was neither contiguous to Orland Hills nor separated from Orland Hills only by forest preserve district property. Therefore, Orland Park argues, the trial court erred in denying Orland Park's motion for summary judgment in which Orland Park maintained that Orland Hills had no standing to bring a *quo warranto* proceeding.

A trial court's rulings on motions for summary judgment are reviewed *de novo* on appeal. *W.C. Richards Co. v. Hartford Accident & Indemnity Co.*, 311 Ill. App. 3d 218, 220, 724 N.E.2d 63 (1999).

The annexation by Orland Hills in the instant case was pursuant to sections 7—1—1 and 7—1—8 of the Municipal Code. 65 ILCS 5/7—1—1, 7—1—8 (West 1996). Section 7—1—8 of the Code concerns annexations where the property to be annexed is "contiguous" to the annexing municipality. The parties agree that Orland Hills is not contiguous to the subject property in the sense of sharing a common boundary. Pursuant to section 7—1—1, however, "[e]xcept in counties with a population of more than 500,000 but less than 3,000,000, territory which is not contiguous to a municipality but is separated therefrom only by a forest preserve district may be annexed to the municipality pursuant to Sections 7—1—7 or 7—1—8." 65 ILCS 5/7—1—1 (West 1996).

The language of a statute generally provides the best evidence of a statute's intent, and where that language is clear and unambiguous, the plain and ordinary meaning of the words will be given effect without resorting to extrinsic aids for construction. *Brown v. Cook County Forest Preserve*, 284 Ill. App. 3d 1098, 1100-01, 673 N.E.2d 383 (1996). Under the plain language of section 7—1—1, a parcel of property may be annexed even though the annexing municipality and the property do not share a border so long as they are separated only by forest preserve property. Orland Hills points out, correctly, that where

the subject property's southern border touches the forest preserve and Orland Hills' western boundary touches the same forest preserve property, its annexation appears to comply with the unambiguous statutory language in section 7—1—1.

People ex rel. Ryan v. Village of Bartlett, 151 Ill. App. 3d 533, 502 N.E.2d 443 (1986), the only case interpreting the forest preserve portion of section 7—1—1, also supports the annexation of the subject property by Orland Hills. In Bartlett, the plaintiff challenged the annexation by the defendant village of property that was not contiguous to the village's boundaries. The property sought to be annexed was bordered on part of its eastern side by property belonging to the Du Page County Forest Preserve District. That same forest preserve property also touched the southern border of the defendant village. The plaintiff argued that section 7—1—1 should not apply because unincorporated property and parts of three different roads also lay between the village and subject property. Bartlett, 151 Ill. App. 3d at 535. A similar argument is made by Orland Park in the instant case. Orland Park contends that where property lying within incorporated Orland Park also lies between the subject property and the boundaries of Orland Hills, "the Subject Property is not separated from Orland Hills 'only' by forest preserve district land but, in fact, is separated by territory previously annexed by Orland Park." In Bartlett, the court held that the word "only," as used in section 7—1—1, "was intended to mean that only a forest preserve district separates territory which is not contiguous to a municipality and not that all boundaries of both the territory to be annexed and the annexing municipality must be separated only by a forest preserve district." (Emphasis in original.) Bartlett, 151 Ill. App. 3d at 536. Such an interpretation was the only logical result, the court continued, because under the plaintiff's interpretation, the only possible fact situation to which the amendment would apply would be one where the entire territory to be annexed was surrounded by a forest preserve district which, in turn, was wholly surrounded by a municipality. Bartlett, 151 Ill. App. 3d at 536. We agree with the Bartlett court's reasoning and therefore find the argument of Orland Park in this regard to be without merit.

Orland Park also contends that the intent of section 7—1—1 would be violated by allowing Orland Hills to annex the subject property. Orland Park points to a portion of Bartlett, 151 Ill. App. 3d at 535, stating that the defendant village "further argues that the intent of the amendment to section 7—1—1 is clearly to permit annexation where a forest preserve district creates an artificial barrier which cannot be annexed and which prevents the orderly growth of a municipality in the direction of the intervening forest preserve district." Orland Park

maintains that where no "orderly growth" in the direction of the forest preserve is possible because all of the property immediately west of the forest preserve is the territory of Orland Park, the forest preserve is not creating an "artificial barrier" to the growth of Orland Hills and section 7—1—1 should not therefore apply. The court in *Bartlett*, however, in making the above statement, was merely setting forth the argument of one of the parties. Although the party making the above argument was ultimately successful, the statement relied upon by Orland Park was *not* the holding of the case. Application of section 7—1—1 is not conditioned upon a forest preserve creating an "artificial barrier" or preventing orderly growth and we do not read *Bartlett* as finding preconditions to application of the statute.

Aside from the portion bordering the forest preserve, the subject property in the instant case was surrounded largely by territory under the jurisdiction of Orland Park. In *Bartlett*, however, the land surrounding the subject property aside from forest preserve was largely unincorporated. Orland Park argues that *Bartlett* is distinguishable on this basis. We again find that neither the plain language of section 7—1—1 nor the holding in *Bartlett* requires a different result based on the types of property surrounding the subject property.

Ultimately, the court in *Bartlett* held section 7—1—1 was intended to allow annexation in the situation before it where only the forest preserve property lay between the eastern boundary of the subject property and the southern boundary of the plaintiff village. 151 Ill. App. 3d at 536. Similarly, in the instant case, only forest preserve property lies between the southern boundary of the subject property and the western boundary of Orland Hills. We thus find that both the plain language of section 7—1—1 and the *Bartlett* decision support the trial court's ruling here.

During the pendency of this appeal, Orland Park filed a motion for leave to file a supplemental brief to address new legislation affecting section 7—1—1. We denied the motion and note that, at the time, the legislation was still pending and did not have the force of law. On June 13, 2000, the relevant legislation, Senate Bill 1647, was signed into law as Public Act 91—824. The Act amends section 7—1—1 to state that an annexation through forest preserve property may only occur where:

> "the annexing municipality can show that the forest preserve district creates an artificial barrier preventing the annexation and that the location of the forest preserve district property prevents the orderly natural growth of the annexing municipality. It shall be conclusively presumed that the forest preserve district does not create an artificial barrier if the property sought to be annexed is

bounded on at least 3 sides by (i) one or more other municipalities (other than the municipality seeking annexation through the existing forest preserve district), (ii) forest preserve district property, or (iii) a combination of other municipalities and forest preserve district property. It shall also be conclusively presumed that the forest preserve district does not create an artificial barrier if the municipality seeking annexation is not the closest municipality to the property to be annexed." Pub. Act 91—824, § 90—5, eff. June 13, 2000 (amending 65 ILCS 5/7—1—1 (West 1998)).

The legislation, which was effective immediately, further states that the changes made by the amendatory Act to section 7—1—1 "are declaratory of existing law and shall not be construed as a new enactment." Because the legislation now has the force of law, and purports to be declaratory of existing law, we find it necessary to make the following observations.

As noted earlier, we find the language of the forest preserve provision of section 7—1—1, as it existed prior to the amendment, was unambiguous. Further, even if the provision were ambiguous, it was interpreted in *Bartlett* to require only that the property to be annexed border the forest preserve at one point and that the annexing municipality border the forest preserve at another point. *Bartlett*, 151 Ill. App. 3d at 536. Moreover, the holding in *Bartlett* was not dependent upon the successful party showing that the forest preserve district created an artificial barrier or prevented its orderly growth, the test now described in the amendment to section 7—1—1 as declaratory of existing law. In addition to requiring such a showing, the amendment creates presumptions related to when a forest preserve district creates an artificial barrier and further states that the presumptions are declaratory of existing law. Because the forest preserve provision as it was written prior to Public Act 91—824 did not contain the term "artificial barrier," it would have been impossible for a court applying the provision as it was then written to utilize any conclusive presumptions relating to that nonexistent term.

"While the General Assembly has the power to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent [citations], it is the function of the judiciary to determine what the law is and to apply statutes to cases." *Roth v. Yackley*, 77 Ill. 2d 423, 429, 396 N.E.2d 520 (1979). In *Roth*, our supreme court examined an amendatory change made to the Cannabis Control Act (Ill. Rev. Stat.; 1978 Supp., ch. 56½, par. 710). The General Assembly had stated in the amendatory act that the changes made by the act were declaratory of existing law and were therefore applicable in relation to events which had occurred before

the act's effective date. The prior statutory language, however, had already been interpreted in a contrary manner by the supreme court in *People v. DuMontelle*, 71 Ill. 2d 157, 374 N.E.2d 205 (1978). The court's interpretation of the statutory language in *DuMontelle* had thus become, in effect, a part of the statute. *Roth*, 77 Ill. 2d at 428. The supreme court in *Roth*, upon examination, found it evident that the amendatory act, which purported to be merely declarative of existing law, changed both "the statutory language and prior law as determined by [the supreme court] in *DuMontelle* from the clear import of the original statutory language." *Roth*, 77 Ill. 2d at 428. The court concluded that the General Assembly could not, through its attempt to retroactively declare the prior intent of the statutory language as it existed before the amendment, alter the clear import of the prior statutory language or retroactively overrule a decision of a reviewing court. *Roth*, 77 Ill. 2d at 428-29. The General Assembly's attempt to do so violated the principle of separation of powers. *Roth*, 77 Ill. 2d at 428-29.

Here, it is evident that the amendments to section 7—1—1 made by the legislature change the statute rather than clarify an existing ambiguity. The new language is contrary to both a logical interpretation of the statute as it existed prior to the amendment and to the judicial interpretation of the forest preserve provision set forth in *Bartlett*. Therefore, to the extent the amendment purports to be merely a clarification or declaration of existing law, it violates the constitutional principle of separation of powers found in article II, section 1, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1). See *Roth*, 77 Ill. 2d at 428-29. The amendatory changes to section 7—1—1 made by Public Act 91—824 are of prospective effect only and have no application to the case before us.

■ Orland Park next argues that where Orland Hills will have to use a road that is under Orland Park's jurisdiction to provide general municipal services and police, fire, and emergency services to the subject property, and will have to obtain easements to provide utility service to the subject property, the annexation should fail. Section 7—1—1 was amended by the General Assembly after *Bartlett* to exclude Du Page, and later, Lake County, from its application. Pub. Act 87—1254, § 1, eff. July 1, 1993 (amending 65 ILCS 5/7—1—1 (West 1992)); Pub. Act 89—388, § 5, eff. January 1, 1996 (amending 65 ILCS 5/7—1—1 (West 1994)). The legislative history of the amendment concerning Du Page County indicates that the amendment was a response to municipalities that had jumped over forest preserve districts to annex property but had not been in a position to provide services to the annexed property. See 87th Ill. Gen. Assem., House

Proceedings, December 3, 1992, at 34 (statements of Representative Steczo). Orland Park thus contends that where Orland Hills will have to use a road under Orland Park's jurisdiction to provide services to the subject property and has not yet obtained the necessary utility easements to provide service to the subject property, Orland Hills is manipulating the intent and language of section 7—1—1 in a way the amendments regarding Du Page and Lake Counties were designed to prevent.

There is no indication in the record that Orland Hills will be unable to provide services to the subject property in the future and no requirement that they already be furnishing services at the time of annexation. See *In re Annexation of Certain Territory to the Village of Buffalo Grove*, 128 Ill. App. 2d 261, 273, 261 N.E.2d 746 (1970). Further, the amendments to section 7—1—1 were crafted to apply only to Du Page and, later, Lake Counties. The amendments have no effect on Cook County annexations. Where the subject property is in Cook County, not Du Page or Lake County, and the annexation complies with the unambiguous terms of the statute, we do not find Orland Park's arguments to be persuasive.

■ Orland Park next contends that the trial court erred in granting summary judgment for Orland Hills and denying summary judgment for Orland Park where Orland Hills failed to strictly comply with the annexation petition filing requirements of section 7—1—8. 65 ILCS 5/7—1—8 (West 1996).

The purported voluntary annexation by Orland Hills was initiated on July 1, 1996, when the petitions were filed at the Village Hall. Orland Park's vote on its involuntary annexation took place that same evening, several hours later. Two annexation proceedings involving the same property cannot be legally pending at the same time. *People ex rel. City of Leland Grove v. City of Springfield*, 166 Ill. App. 3d 943, 946, 520 N.E.2d 1205 (1988). Where two such annexation proceedings are occurring, priority is afforded to the proceeding that was initiated first in time. *Leland Grove*, 166 Ill. App. 3d at 946.

Where an annexation is undertaken pursuant to section 7—1—8 of the Municipal Code, a written annexation petition "shall be filed with the municipal clerk." 65 ILCS 5/7—1—8 (West 1996). The parties disagree as to whether that requirement was met by Orland Hills in the instant case. Because such filing initiates a section 7—1—8 annexation proceeding (*Leland Grove*, 166 Ill. App. 3d at 946), a finding that Orland Hills had complied with the statutory filing requirement would mean that its annexation would have priority over Orland Park's section 7—1—13 annexation, which was initiated by the passage of an annexation ordinance later that same day (*Leland Grove*, 166 Ill. App.

3d at 946-49). The trial court, after hearing the parties' arguments, found that Orland Hills' filing of the annexation petitions had been in substantial compliance with the statute. The court, in so ruling, characterized Orland Park's objections to the filing procedure as "trivial."

According to Orland Park, the record indicates that Orland Hills' annexation petitions were not filed with or placed in the custody and/or control of the Orland Hills' village clerk or deputy clerk on July 1, 1996, prior to Orland Park's adoption of its competing annexation ordinances. Instead, the petitions were handed to Sharon Richmond, an administrative clerk who was technically employed by the building department. The dated file stamp Richmond used to stamp the petitions said "Orland Hills building department." Therefore, Orland Park concludes, the petitions were, if anything, filed with the building department and were not properly filed with the municipal clerk as required by section 7—1—8.

There are no cases specifically interpreting what constitutes filing with the municipal clerk as that term is used in section 7—1—8. Orland Park directs us to *Gietl v. Commissioners of Drainage District No. One*, 384 Ill. 499, 501-02, 51 N.E.2d 512 (1943), holding that a document is considered "filed with the town clerk" and "deposited with the clerk of the drainage district" when it is "deposited with and passes into the exclusive control and custody of the clerk, who understandingly receives the same in order that it may become a part of the permanent records of his office." See also *Brelsford v. Community High School District No. 36*, 328 Ill. 27, 31, 159 N.E. 237 (1927) ("To file an instrument it must be delivered to the proper officer at the office where it is required to be filed ***"). Orland Park admits, however, that it does not contend that either the elected clerk or designated deputy clerk had to physically touch the documents. Instead, Orland Park contends, the documents need only be placed in the "custody and control" of the clerk's office for proper filing to occur. Also discussed by the parties are cases holding that "filing 'in the court' or 'with the clerk' means filing at the customary office and within the customary office hours." *Daniels v. Cavner*, 404 Ill. 372, 378, 88 N.E.2d 823 (1949); see also *Bush v. City of Champaign Electoral Board*, 271 Ill. App. 3d 991, 994, 649 N.E.2d 565 (1995) (where the Election Code (10 ILCS 5/10—8 (West 1992)) required a petition to be "filed" with the city clerk's office, "filing" meant "filing at the customary office and within the customary office hours of the public entity"); *Wilkins v. Dellenback*, 149 Ill. App. 3d 549, 554, 500 N.E.2d 692 (1986) (the filing date of a section 2—1401 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) petition is when the petition is received and stamped by the circuit clerk's office).

The record establishes that during the customary business hours of the village clerk's office, village administrator Daly brought the annexation petitions to the only counter where such documents could be filed with the village clerk of Orland Hills. Any of the clerical personnel who worked in the general office area behind the counter were authorized to accept filings for any of the Village departments, including the clerk's office. Sharon Richmond, an administrative assistant employed by the building department, accepted the petitions. Richmond worked in the general office, was authorized to accept filings for the village clerk, and often accepted such filings. The elected village clerk was never present during working hours to accept filings due to the part-time nature of the position. The deputy clerk, although present that day, may not have been available or present at the time the filing occurred. The petitions were stamped received with a time and date stamp. The evidence indicates that the workers drew no distinction between the building department and Village stamps and would use either stamp to accept filings as convenience dictated. The petitions were then placed in a zoning envelope and put into a drawer where filings requiring public hearings were customarily placed. No later than the next morning, copies of the petitions were distributed to a number of village officials, including the village clerk. There is no evidence that this filing was treated any differently than any other filing with the Village.

The annexation petitions were presented to the office of the village clerk during the customary business hours of that office and were accepted at that office by a clerical employee authorized to accept such a filing. Certainly no more than this is required under the statute, even under a strict compliance standard. Although the clerk or deputy clerk may not have immediately seen or received the petitions, the petitions were clearly within the care and custody of the clerk's office and were thus statutorily "filed" for the purposes of section 7—1—8.

■ Orland Park also contends that Orland Hills lacked standing to bring a *quo warranto* proceeding. Its argument is premised on the alleged failure of Orland Hills to comply with the statutory filing requirements. The above finding that the filing was in compliance with the statute is thus dispositive of Orland Park's standing argument.

Having resolved the issues raised by appellant Orland Park in favor of Orland Hills, we do not find it necessary to address appellee Orland Hills' contention that Orland Park's annexation ordinance was void *ab initio*. The trial court correctly granted Orland Hills' motion for summary judgment and correctly denied Orland Park's cross-

motion for summary judgment. The orders of the trial court are affirmed.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.