2016 IL App (1st) 142216
No. 1-14-2216
Opinion filed June 28, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| GERALD COLAGROSSI, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 11 L 5421 |
| | ) | |
| THE ROYAL BANK OF SCOTLAND, | ) | The Honorable |
| Formerly Known as ABN AMRO Bank N.V., | ) | Sanjay T. Tailor, |
| | ) | Judge, presiding. |
| Defendant-Appellee. | ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff Gerald Colagrossi asks that we reverse the trial court's denial of his motion for

substitution of judge as of right. If we agree with the trial court's denial of that motion,

Colagrossi asks that we reverse the trial court's dismissal of his the second amended complaint.

We affirm. We conclude the motion for a substitution of judge as of right was properly denied

because Colagrossi engaged in impermissible "judge-shopping." Colagrossi filed two lawsuits

three years apart involving the same parties and based on the same set of operative facts. Both

were randomly assigned to the same circuit court judge; the motion for substitution in the later

case was made nine days after the trial court judge granted summary judgment to the defendants in the earlier case. Further, we find the dismissal was proper as the employment contract at issue superseded any oral agreements between the parties. Additionally, the doctrine of *res judicata* operates to prevent Colagrossi's claims.

¶ 2                                              BACKGROUND

¶ 3          Colagrossi began his career in 1983 as a runner in the futures industry. By 1990, he had developed a group of employees at Man Financial, Inc., that provided 24-hour execution of futures' orders (Desk). Colagrossi controlled hiring, firing, and compensating these employees. Colagrossi built a client roster of investors who traded futures' contracts through the Desk and "Exchange Futures for Physical" (EFP) trades that were executed by a separate foreign exchange desk.

¶ 4          Colagrossi alleged that in early 2005 a headhunter contacted the Desk to inquire whether it would consider moving to ABN AMRO, Inc. (AAI), a wholly-owned broker/dealer subsidiary of ABN AMRO Bank N.V. (ABN Amro). Later the headhunter asked if a representative of the Desk would meet with John Murphy, who was responsible to the CEO of AAI and to the heads of ABN Amro's investment banking business and the foreign exchange desk that executed the EFP trades.

¶ 5          Colagrossi and Murphy began discussing a potential move from Man Financial to ABN Amro. On July 29, 2005, Murphy sent an offer letter to Colagrossi outlining the terms of the employment offer. A paragraph titled "Modification" provided:

> "This agreement contains the entire understanding of the parties regarding the subject matter hereof and *no terms, including compensation terms*, may be modified except by a document signed by the parties, acknowledged by a human resources representative, and

referring explicitly hereto. *You acknowledge that you have not relied on any oral or written representations or understanding not explicitly contained herein* in executing this agreement. *This document supercedes any and all oral or written understandings* regarding your employments with ABN AMRO or any of its affiliates." (Emphases added.)

The letter also stated in a separate paragraph: "This offer letter contains our entire understanding regarding the subject matter hereof, and nothing in this offer letter is intended to create a fixed term of employment at ABN AMRO." The letter was signed "John Murphy, Managing Director at ABN Amro."

¶ 6　　　　During August 2005 Colagrossi began working at AAI, bringing his clients and "book" of investments with him. Colagrossi signed the employment letter on October 18, 2005.　Within the first month after Colagrossi moved and began introducing EFP business, he realized that he was not receiving fees for those referrals. Colagrossi confronted Murphy about the nonpayment, and was told that it would be "all sorted out." Colagrossi had four or more similar conversations regarding the nonpayment.

¶ 7　　　　Ten months later, in May 2006, UBS Securities, LLC, acquired AAI through a stock and asset purchase agreement, after which AAI was dissolved. Murphy then became head of North American Futures at UBS. Murphy told Colagrossi that the arrangement he had in place with ABN Amro for introducing EFP contracts would continue. In September 2006, UBS sent Colagrossi a letter setting forth his compensation and benefits "commencing October 1, 2006." The UBS employment agreement contained an integration clause barring reliance on earlier oral agreements. One year later, on September 27, 2007, UBS notified Colagrossi by letter that he would be terminated.

¶ 8        Sometime before February 6, 2010, RBS acquired ABN Amro N.V. and changed its name to "The Royal Bank of Scotland."

¶ 9                                    2008 UBS Lawsuit

¶ 10        In 2008 Colagrossi sued UBS in the circuit court of Cook County, alleging breach of contract and violation of the Illinois Wage Payment and Collections Act for the nonpayment of funds for EFP referrals. The breach of contract claim alleged fraudulent inducement based on a conversation Colagrossi had with Murphy in which Murphy told him ABN Amro's futures business was not for sale even though Murphy knew ABN Amro was planning to sell. Colagrossi also alleged that Murphy promised he would have the same control over his employees and a 50/50 split of the revenue generated by the EFP trades.

¶ 11        The UBS employment agreement, signed in September 2006, provided for a base salary and discretionary bonuses, but contained no provision about EFP profits. The agreement also provided, "This agreement contains the entire understanding and agreement between the parties concerning the subject matter hereof (including any compensation arrangements), and supersedes all prior agreements, understanding, discussions, negotiations, and undertakings, whether written or oral, between the parties."

¶ 12        UBS removed the case to federal court based on diversity jurisdiction. In 2014, the district court granted summary judgment to UBS, finding there was "one set of negotiations, with one person representing ABN, regarding one issue: whether [Colagrossi] would work for ABN." Further, the district court found that the integration clause "explicitly [barred] earlier oral agreements with 'ABN AMRO *or any of its affiliates*.' " (Emphasis in original.) The integration clause related both to "compensation arrangements" and "to any issue affecting the overall employment relationship."

¶ 13                                     2008 AAI Bank Lawsuit

¶ 14       Days after he filed the first lawsuit against UBS, Colagrossi filed a second complaint in the circuit court of Cook County, this time against AAI (2008 case). Colagrossi alleged Murphy fraudulently induced him to move his business by falsely promising a 50/50 split in profits from referrals for EFP trades executed by a separate foreign exchange desk. Additionally, Colagrossi alleged that (1) Murphy lied when he assured Colagrossi that AAI was not for sale and (2) Colagrossi would not have moved his business to AAI had he known that AAI was to be sold.

¶ 15       In 2010, Colagrossi filed a second amended complaint. As to his fraudulent inducement claim, Colagrossi alleged that Murphy told him ABN Amro's futures business, AAI, was not for sale, even though Murphy knew ABN Amro was planning to sell its futures business. Colagrossi also alleged that Murphy promised him that he would have the same control over the Desk as he had at Man Financial and that his group would receive a 50/50 split of all EFP revenue that they introduced to AAI.

¶ 16       AAI moved for summary judgment. In June 2013, Judge Tailor granted summary judgment because the nonreliance clause in the employment agreement barred the claims, and, further, Colagrossi waived his right by failing to timely object to nonpayment of his commission.

¶ 17       Colagrossi appealed. This court affirmed in an unpublished order. *Colagrossi v. UBS Securities, LLC*, 2015 IL App (1st) 133694-U (the named parties were UBS and "ABN Amro, Inc."). We found Colagrossi had one agreement with AAI—to provide services as an employee—and the employment agreement he signed and the nonreliance clause were dispositive of his fraudulent inducement claim. We held the "Modification" clause barred Colagrossi's fraudulent inducement claim against AAI and rejected Colagrossi's contention that

signing the agreement after he began his business relationship with AAI compelled a different result.

¶ 18                                    2011 RBS Lawsuit

¶ 19        This case began in May 2011, when Colagrossi sued under the Illinois Wage Payment and Collections Act (820 ILCS 115/1 *et seq.* (West 2010)), naming as defendants AAI and The Royal Bank of Scotland N.V. (RBS), formerly ABN AMRO Bank N.V. The complaint stated that ABN Amro had changed its name to RBS on February 6, 2010. The complaint also stated that AAI was "a wholly-owned broker/dealer subsidiary of [RBS]." Colagrossi sought 50% of profits earned for EFP referrals.

¶ 20        Over the next year this case was continued several times. In August 2012, Judge Tailor continued the case for "settlement status" and ordered the "parties shall also appear on discovery status on related [2008] case." After four more continuances, Judge Tailor dismissed for want of prosecution on December 19. The dismissal order was vacated on January 8, 2013. After a few more continuances, Judge Tailor entered summary judgment on June 18 in the 2008 case. Moments after this ruling, defense counsel pointed out the 2011 case (referring to it as "a parallel case") was before the court for a status hearing. Colagrossi's counsel then stated he intended ask for leave to file an amended complaint. The trial court continued the case to allow the parties time to file motions and responses.

¶ 21        Nine days later, on June 27, Colagrossi moved for a substitution of judge as of right. 735 ILCS 5/2-1001(a)(2) (West 2012). On July 2, Colagrossi filed an amended complaint adding a fraudulent inducement claim. On August 2, Colagrossi filed a motion for leave to file a second amended complaint, again alleging that Murphy told him AAI was not for sale even though Murphy knew of plans to sell and that Murphy had promised a 50/50 split of the EFP referral

revenues. The second-amended complaint dropped AAI as one of the defendants and proceeded against "The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.)." On August 13, Colagrossi filed another motion for substitution of judge as of right, which was identical to the June 27 motion but for the filing dates.

¶ 22    Colagrossi argued in his reply to RBS's response on the motion for substitution that RBS was not a party in the 2008 case and his second amended complaint in this case asserted no claims against AAI so the ruling in the 2008 case had "nothing to do with" RBS. Thus, he concluded, the trial court had never ruled on any claims against RBS.

¶ 23    On December 2, the trial court denied the motion for a substitution of judge and allowed the filing of the second-amended complaint. Colagrossi moved for reconsideration of the ruling on substitution of judge. RBS then filed a combined motion to dismiss Colagrossi's second-amended complaint, under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)). RBS argued that Colagrossi's claims were (i) "completely duplicative" of the claims in the related case; (ii) time-barred; (iii) waived; and (iv) barred by the nonreliance clause in the written employment agreement.

¶ 24     In March 2014 Judge Tailor denied Colagrossi's motion for reconsideration of the denial of the motion for substitution of judge as of right. At that hearing, the trial court asked Colagrossi's counsel about the defense position that "RBS is ABN, it's just a new name?" Colagrossi's counsel answered "I'm not disputing that" and also did not dispute that the employment agreement mentioned the "parent or affiliate."

¶ 25    On June 19, 2014, a hearing was held at which attorneys for RBS argued summary judgment was proper under the doctrine of *res judicata* because the issues and parties were identical to those litigated in the 2008 lawsuit. Judge Tailor granted RBS's motion to dismiss on

other grounds, finding that the nonreliance clause barred the claim "just as it barred the claim in the other action." Judge Tailor further stated "[t]here may well be other bases upon which [RBS] would be entitled to dismissal but in light of my ruling that the claim is barred by the nonreliance provision I need not reach those other issues."

¶ 26                                                     ANALYSIS

¶ 27        Colagrossi seeks reversal of both the order denying his motion for a substitution of judge as of right and granting the RBS's motion to dismiss.

¶ 28                                    Substitution of Judge as of Right

¶ 29        In any civil action each party is entitled to one substitution of judge without cause as a matter of right. 735 ILCS 5/2-1001(a)(2)(i) (West 2012). A party must "timely" exercise this right. 735 ILCS 5/2-1001(a)(2) (West 2012). We review the denial of a motion for substitution of judge as of right *de novo*. *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶ 21.

¶ 30        "A motion is timely and *shall be* granted, according to the statute, provided that the motion is presented before a hearing begins and provided that the Judge *to whom it is presented* has not made any substantial rulings. 735 ILCS 5/2-1001(a)(2)(i), (ii) (West 2006)." (Emphases in original.) *Crecos*, 2015 IL App (1st) 132756, ¶ 25. "A ruling is considered substantial when it relates directly to the merits of the case." *Id.* (citing *Nasrallah v. Davilla*, 326 Ill. App. 3d 1036, 1039-40 (2001)). Examples of "rulings on substantial issues" include situations in which the trial court has ruled on a motion to dismiss, made pretrial rulings of law, or where the party moving for a substitution of judge has discussed issues with the trial judge, who then indicates a position on a particular point. *Partipilo v. Partipilo*, 331 Ill. App. 3d 394, 398 (2002).

¶ 31        Citing *Schnepf v. Schnepf*, 2013 IL App (4th) 121142, ¶ 27, Colagrossi argues he has an absolute right to substitution of judge because under *Schnepf* the "testing the waters" doctrine is

obsolete and even if the doctrine were viable, it does not apply because the two lawsuits filed in state court are separate and distinct.

¶ 32     In *Bowman v. Ottney*, 2015 IL 119000, the Illinois Supreme Court addressed this issue in the context of a plaintiff voluntarily dismissing a claim she had filed against two defendants and later refiled against only one of the defendants. The plaintiff argued for a "bright line" rule allowing a substitution as of right and interpreting the phrase "in the case" to mean the case currently pending before the court. *Id.* ¶ 11. The remaining defendant in the newly filed case contended that the plaintiff had "tested the waters" and formed an opinion as to the court's disposition of an issue.

¶ 33     The supreme court characterized the plaintiff's argument as a "narrow and literal interpretation of the phrase 'in the case' " that would "create a loophole" allowing the purpose of the statute to be defeated. The supreme court concluded "in the case" references "all proceedings between the parties in which the judge to whom the motion is presented has made substantial rulings with respect to the cause of action before the court," and stated "the principle that section 2-1001(a)(2) should be read as favoring substitution does not require a construction that permits a party to engage in 'judge shopping.' " *Id.* ¶¶ 18, 21. Indeed, the supreme court in *Bowman* recognized that a party may *not* "judge shop" until a sympathetic judge is found. *Id.* ¶ 18. The supreme court held that in the case of a voluntary dismissal and refiling, a trial court has discretion to deny an "immediately filed" motion for substitution of judge based on the fact that the same judge to whom the motion is presented made substantive rulings in the previously dismissed case. *Id.* ¶ 29.

¶ 34     The supreme court determined that the plaintiff had only a single cause of action against the defendant, although she had initiated two lawsuits with distinct docket designations by filing

two separate complaints, the first in 2009 and the other four years later after the first suit had been voluntarily dismissed. *Id*. The defendant's alleged negligence was the basis for the plaintiff's single cause of action alleged in each lawsuit. *Id.* ¶ 22. The supreme court, citing *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998), concluded: "[t]hus, our interpretation is bolstered, rather than hindered, by the plain language of the statute" *Ottney*, 2015 IL 119000, ¶ 22.

¶ 35        We realize that *Bowman* addressed the specific circumstance where a plaintiff voluntarily dismisses a case and refiles, hoping the newly docketed case would be assigned to a different judge. This case presents a different factual scenario, albeit one where Colagrossi shares the motivation of seeking a different outcome before a different judge in what was basically the same claim. His procedural maneuvering, as in *Bowman*, constitutes impermissible and blatant judge shopping, after having received an unfavorable ruling before the same judge in a related case with the same facts and, as will be explained, parties.

¶ 36        *Bowman* was published December 17, 2015, shortly before Colagrossi filed his reply brief. In his reply, Colagrossi argues the reasoning of both the majority and dissent in *Bowman* establish that the "test the waters" doctrine "does not provide a valid basis for denying a party's absolute right to substitution of judge." Calling the doctrine "obsolete and amorphous," Colagrossi seeks to avoid the implications of *Bowman*'s majority opinion. Colagrossi points out the split in authority among the appellate districts that had resulted in contradictory language regarding judge shopping. Compare *Schnepf v. Schnepf*, 2013 IL App (4th) 121142, ¶ 27 (right to substitution of judge is absolute when properly made, and the circuit court has no discretion to deny the motion), with *Partipilo*, 331 Ill. App. 3d at 399 ("Even when the court has not ruled on a substantial issue, a motion for substitution of judge should be denied if the moving party had an

opportunity to test the waters and form an opinion as to the court's reaction to his or her claim."). But when there is a conflict among districts, the circuit court is bound by the decisions of the appellate court in the district in which it sits. *Rein v. State Farm Mutual Automobile Insurance Co.*, 407 Ill. App. 3d 969, 978 (2011). Thus, "testing the waters" remains a viable objection to substitution of judge motions as of right in the First District.

¶ 37 Colagrossi attempts to distinguish *Partipilo* as having the same plaintiff and defendant and argues that this case involves the same plaintiff but different defendants. But, the parties are the same—The Royal Bank of Scotland is merely a name change from ABN Amro. The original complaint filed in May 2011 stated that ABN Amro had changed its name to RBS on February 6, 2010, and that AAI was "a wholly-owned broker/dealer subsidiary of [RBS]." The second amended complaint was against RBS "formerly known as ABN Amro Bank N.V." Colagrossi's counsel agreed in open court that "The Royal Bank of Scotland" was simply a new name for ABN Amro. This reality confounds Colagrossi's insistence that by dropping AAI as a defendant he is proceeding against a brand new defendant. RBS was new in name only; all the allegations against it involved AAI and its parent corporation ABN Amro before AAI's sale to UBS and ABN Amro's takeover by RBS. We cannot ignore that the second amended complaint dropped AAI as one of the defendants, and proceeded against "The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.)" as the sole defendant.

¶ 38 Regarding timeliness of Colagrossi's motion, this case was assigned to Judge Tailor in May 2011. In December 2012 Judge Tailor dismissed the lawsuit for want of prosecution, then vacated his order in January 2013. Another six months elapsed before the 2008 case was resolved against Colagrossi. During that entire time both lawsuits were pending before Judge Tailor. Although the right to substitution of judge is absolute when properly made, " 'a motion

for substitution of judge as of right must be filed at the earliest practical moment before commencement of trial or hearing and before the trial judge considering the motion rules upon a substantial issue in the case.' " *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 23 (quoting *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 245-46 (2006) (citing *In re Estate of Gay*, 353 Ill. App. 3d 341, 343 (2004))).

¶ 39    The rule prohibiting judge shopping has the desirable effect of restraining litigants from seeking substitution after discovering the judge's view on a contested issue in their case. Keeping parties from testing the waters maintains the integrity of the court, prevents the waste of judicial resources, and obstructs dilatory tactics. The close proximity between the ruling in the 2008 case and the motion for substitution of judge is not coincidental. Instead of moving for substitution at the "earliest practical moment," Colagrossi moved the "moment" he learned what fate held in store. The 2011 case was set for a status hearing on the same date that arguments were heard on the summary judgment motion in the 2008 case. As soon as the trial court granted summary judgment, defense counsel pointed out the "parallel" 2011 case. Colagrossi's counsel immediately informed the trial court that he intended to ask for leave to file an amended complaint, a necessary prerequisite to counter defense counsel's expected "testing the waters" argument. Once the judge has tipped his or her hand indicating how he or she will rule on a substantive issue (here, actually ruling on the substantive issue), the right to substitution as of right dissolves because it is no longer timely.

¶ 40    Colagrossi maintains that his lawsuits are separate and distinct. We believe Colagrossi's serial filing of lawsuits is an effort to circumvent the established rule against "testing the waters," demonstrated by the timing of filings in the two state lawsuits. This cause was continued several times while Colagrossi and UBS negotiated over the next two years but the parties never reached

an agreement. The length of time that elapsed bolsters our decision; with two cases pending before the same judge for over two years, inevitably Colagrossi learned facts about the judge's view of the claims.

¶ 41                              Section 2-619 Dismissal

¶ 42        Because we have decided that Colagrossi's motion for a substitution of judge as of right was properly denied, we turn to his argument that the trial court erred when it granted RBS's motion to dismiss.

¶ 43        A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts a defense outside the complaint that defeats it, and is a means of summarily disposing of cases that are barred by easily proved defenses or defects. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31; 735 ILCS 5/2-619 (West 2012). Specifically, section 2-619(a)(9) permits involuntary dismissal where the claim is barred by "other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2012). We review a trial court's dismissal under section 2-619 of the Code *de novo*, noting that we may affirm the dismissal on any proper basis presented by the record, even where the court dismissed on an improper ground (*Southern Wine & Spirits of Illinois, Inc. v. Steiner*, 2014 IL App (1st) 123435, ¶ 14), or if our decision is not based on the grounds on which the trial court relied. *Gadson v. Among Friends Adult Day Care, Inc.*, 2015 IL App (1st) 141967, ¶ 15.

¶ 44        Colagrossi's second amended complaint filed on August 2, 2013, and allowed on December 2, alleged fraudulent inducement by RBS ("formerly known as ABN AMRO Bank N.V.") in that Murphy, as its agent, told Colagrossi that ABN Amro was not intending to sell its futures business. Colagrossi alleged that he never would have moved his business from Man

Financial to ABN Amro if he knew of the plan to sell the futures business, but he made the move relying on Murphy's intentional misrepresentation. In early 2006, ABN Amro sold its futures business, AAI, which now included the Desk, to UBS. The complaint also alleged that ABN Amro agreed to pay him a "50/50 split on EFP execution revenue" if Colagrossi moved his business to AAI.

¶ 45     Fraud in the inducement exists where the party fully understands what he is signing and is aware of the nature and character of the instrument he has executed, but is deceived by fraudulent representations as to the facts outside the instrument itself. *Belleville National Bank v. Rose*, 119 Ill. App. 3d 56, 59 (1983). The elements of fraud in the inducement are: (i) a false representation of material fact, (ii) made with knowledge or belief of that representation's falsity, (iii) made with the purpose of inducing another party to act or to refrain from acting, and (iv) the other party reasonably relies upon the representation to its detriment. *Enterprise Recovery Systems, Inc. v. Salmeron*, 401 Ill. App. 3d 65, 72 (2010).

¶ 46     Colagrossi maintains that all these elements were met, sufficient to withstand a motion for summary judgment. But, "[t]he defense of fraud is, in most situations, unavailable to avoid the effect of the written agreement where the complaining party could have discovered the fraud by reading the instrument, and was in fact afforded a full opportunity to do so." *Belleville National Bank*, 119 Ill. App. 3d at 59. In *Belleville National Bank* the defendants "had the opportunity to read the note they signed and discover that the terms of the note were not the same as the terms which defendants claim were presented to them orally." *Id*. at 60. Colagrossi had ample opportunity to consider the terms set forth in the employment letter sent in July and consulted with an attorney before he signed it in October.

¶ 47 The employment agreement stated in two separate sections that it "contain[ed] our entire understanding regarding the subject matter hereof" and also stated that it "supercede[d] [*sic*] any and all oral or written understandings" between the parties. And Colagrossi acknowledged that he had "not relied on any oral or written representations or understanding not explicitly contained herein in executing this agreement." This explicit provision is determinative. Colagrossi has not established justifiable reliance on any purported statement by Murphy and signed the employment agreement containing integration and nonreliance clauses. See *Schrager v. Bailey*, 2012 IL App (1st) 111943, ¶ 27 (where the settlement agreement stated that the plaintiff was relying solely on the information contained in the agreement and not on any prior representations, he could not establish justifiable reliance on the defendants' purported misrepresentations); see also *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶¶ 79-80 (where the tenant signed leases containing integration and nonreliance clauses, the tenant could not establish justifiable reliance on any alleged statements made by the owner prior to entering into the leases).

¶ 48 Regarding the referral fee, the "Modification" paragraph in the agreement precludes Colagrossi's claim. Colagrossi's attempt to characterize the 50/50 split referral fee as outside the employment contract terms fails because this alleged oral agreement would have been compensation for referrals, yet it was not included in the "Compensation" paragraph in the agreement. Thus, the employment agreement's provisions for compensation together with the nonreliance clause negated the claim.

¶ 49 Finally, we note that this court has addressed the allegation that Murphy made a false statement of material fact that he knew or believed to be false. See *Colagrossi v. UBS Securities, LLC*, 2015 Ill App (1st) 133694-U, ¶ 41. We found the evidence affirmatively demonstrated AAI

was not for sale during the negotiations and ABN Amro did not begin to explore a possible sale until after December 31, 2005.

¶ 50                                                    *Res Judicata*

¶ 51        Were this court to assume, *arguendo*, that Colagrossi's assertions were sound, the doctrine of *res judicata* would operate to defeat the complaint's allegations. *Res judicata* is an equitable doctrine designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 328 (2009). Under the doctrine of *res judicata*, a final judgment on the merits rendered by a "court of competent jurisdiction" bars a later suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). And, a determination of whether a claim is barred under the doctrine of *res judicata* is a question of law, which we review *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004).

¶ 52        The doctrine consists of three requirements: (i) identity of parties or their privies in the lawsuits; (ii) identity of causes of action; and (iii) final judgment on the merits rendered by a court of competent jurisdiction. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). Colagrossi asserted the same cause of action, and sought the same remedy, against defendants that are essentially the same entity. If all three requirements of the doctrine are satisfied, *res judicata* "bars not only what was actually decided in the first action but also whatever could have been decided." *Id.*

¶ 53        The parties need not be identical so long as their interests are sufficiently similar. *Cummings v. Iron Hustler Corp.*, 118 Ill. App. 3d 327, 332 (1983). A corporate parent and its subsidiaries are considered sufficiently similar for purposes of section 2-619. See *Aetna Casualty & Surety Co. v. Kerr-McGee Chemical Corp.*, 875 F.2d 1252, 1257 (1989) (Illinois interprets

section 2-619 broadly; "same parties" requirement may be satisfied even though technically distinct corporate entities involved in the various pending actions). Moreover, privity between the parties in both actions may result in sufficient similarity in interest to be considered the "same parties." *Cummings*, 118 Ill. App. 3d at 333 ("obvious privity" among former employer and successor corporations named in later action rendered parties sufficiently similar in interest to be considered "same parties"). For example, in *Aetna Casualty & Surety Co.*, the "same parties" requirement was satisfied, although in one of the actions the subsidiaries, not their corporate parent, were named as parties. *Aetna Casualty & Surety Co.*, 875 F.2d at 1256. In *Philips Electronics., N.V. v. New Hampshire Insurance Co.*, 295 Ill. App. 3d 895 (1998), where a defendant insurer sought a declaratory judgment that they owed no coverage under their insurance policies for losses claimed by their insured, a subsidiary and its parent corporation, this court held that a foreign court's judgment fulfilled the "same parties" requirement because the "interests of these parties were 'sufficiently congruent' to satisfy section 2-619(a)(3)." *Id.* at 904-05 (quoting *Aetna Casualty & Surety Co.*, 875 F.2d at 1257).

¶ 54    Colagrossi insisted throughout the pretrial proceedings that RBS was not involved in either prior lawsuit. At the same time, Colagrossi stated in the pleadings that ABN Amro had changed its name to The Royal Bank of Scotland in February 2010. And the record reflects that the name change came about after RBS acquired ABN Amro through an acquisition. The named defendants in the first related case filed in 2008 were UBS and AAI. The named defendant in this, the second related, case filed in 2011, was RBS, "(formerly known as ABN AMRO Bank N.V.)." But the record establishes that AAI was a wholly-owned subsidiary of ABN Amro. "Obvious privity" is present when the only difference between ABN Amro and RBS is a name change and ABN Amro was the parent corporation. Colagrossi's fraud claims in this case and the

earlier two cases stem from the same negotiations with the same person relating to the same employment and same employment agreement, and against what would be legally considered the same party.

¶ 55    This court has defined "cause of action" as the set of facts giving the plaintiff the right to relief. *Gadson v. Among Friends Adult Day Care, Inc.*, 2015 IL App (1st) 141967, ¶ 16. The facts as they exist at the time of judgment are determinative. *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 23. Colagrossi has advanced his fraudulent inducement claim in various ways, but the operative facts remain constant. Essentially, Colagrossi alleged Murphy made oral promises that caused Colagrossi to move his business. Colagrossi signed two separate employment contracts, one with ABN Amro and another with UBS a year later. Each contract contained a nonreliance clause.

¶ 56    Colagrossi attempts to circumvent the obstacle of having based his claim on the same operative facts when he asserts that the nonreliance clause in the employment agreement was not intended to limit his ability to contract regarding terms unrelated to his employment. Colagrossi's agreement with RBS to pay him a percentage of the profits on EFP trades with RBS had "nothing to do with his AAI employment agreement at issue in the AAI litigation."

¶ 57    Significantly, the federal district court dismissed the earlier lawsuit against UBS, finding that the integration clause in the employment contract barred reliance on earlier oral agreements. In its ruling, the federal district court noted "[t]here was one set of negotiations, with one person representing [ABN Amro], regarding one issue: whether [Colagrossi] would work for [ABN Amro]." *Colagrossi v. UBS Securitites, LLC*, No. 08 C 5471, 2014 WL 2515131, at *5 (N.D. Ill. June 4, 2014). While not binding on this court, lower federal court decisions may be considered persuasive authority. See *Asset Exchange II, LLC v. First Choice Bank*, 2011 IL App (1st)

103718, ¶ 19 (recent opinions from Illinois federal district court cases provide framework for analysis). While the named defendant in that case was UBS, the quoted language pertains to this case as well.

¶ 58    Colagrossi's two earlier lawsuits rested on the same basis as this case. The earlier lawsuits were litigated and resolved. On appeal, this court affirmed the summary judgment in the 2008 case. Colagrossi cannot now reconstitute the same claim by changing the nominal defendant when, by his own pleadings, he admits the company he is suing acquired AAI's parent company and changed its name in 2010. Moreover, to prevail on the fraudulent inducement claim, a plaintiff must prove a defendant made a knowing false statement of material fact on which plaintiff justifiably relied to his detriment. Colagrossi did not establish Murphy even made such a statement. Similarly, Colagrossi's attempt to characterize the purported 50/50 split referral fee as outside the employment contract terms fails because the "Modification" paragraph in the employment agreement precludes Colagrossi's claim.

¶ 59    Affirmed.