# Illinois Official Reports

## Appellate Court

---

*In re Petition to Annex Certain Territory to the Village of Lemont*,
**2017 IL App (1st) 170941**

---

| | |
|---|---|
| Appellate Court Caption | *In re* PETITION TO ANNEX CERTAIN TERRITORY TO THE VILLAGE OF LEMONT, ILLINOIS (The Village of Lemont, an Illinois Municipal Corporation, Intervenor-Appellant; Mid-Iron Club, Inc., Gleneagles Country Club, Inc., Cook Golf Properties, Inc., Pine Meadow Golf Club, Inc., d/b/a Cog Hill, and the Village of Palos Park, an Illinois Municipal Corporation, Objectors- Appellees). |
| District & No. | First District, Third Division <br> Docket No. 1-17-0941 |
| Filed | December 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-COAN-3; the Hon. Carol A. Kipperman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael F. Zimmerman and Nicholas J. Daly, of Tressler LLP, of Chicago, for appellant. <br><br> John B. Murphey, of Rosenthal, Murphey, Coblentz & Donahue, and Gregory R. Meeder, Benjamin L. Schuster, and William F. Farley, of Holland & Knight LLP, both of Chicago, and William J. Hennessy, of Law Offices of William J. Hennessy, of Burr Ridge, for appellees. |

| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion. Presiding Justice Cobbs and Justice Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1      This appeal involves a dispute between two villages about the annexation of unincorporated territory. Opposing annexation into the village of Lemont are several privately owned golf courses along with the Village of Palos Park, and supporting annexation into Lemont are some residential landowners along with the Village of Lemont. The trial court ultimately granted summary judgment to the golf courses and Palos Park, concluding the golf courses had annexation priority because they had not abandoned their earlier-filed annexation petitions. This then legitimized the annexation of their unincorporated territory to Palos Park. The residential landowners and Lemont now appeal, contending the trial court's summary judgment ruling was erroneous. They also contend the court abused its discretion in denying their motion for a substitution of judge and their motion to extend discovery back before 2015. For the reasons to follow, we affirm.

¶ 2                                     BACKGROUND

¶ 3      Several years ago, a wide swath of unincorporated territory in Cook County lay sandwiched between Palos Park and the Village of Lemont. As stated, a dispute arose about whether that territory should have been annexed to Palos Park or the Village of Lemont. In 2015, the golf courses of Gleneagles Country Club, Inc. (Gleneagles), Mid-Iron Club, Inc. (Mid-Iron),[1] and Cog Hill[2] sought to annex their property to Palos Park, with their respective petitions filed in April, February, and March of 2015. The golf courses, together with Ludwig Farms,[3] which filed its petition in 2014, all occupied almost 1500 acres of the unincorporated territory. The voluntary annexation petitions fell under section 7-1-8 of the Illinois Municipal Code (65 ILCS 5/7-1-8 (West 2014)), which permits the annexation of unincorporated territory to a municipality, provided it is contiguous to that municipality at the time of annexation. Section 7-1-8 states that "[t]he corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory," and a majority vote is required for annexation. *Id.*

¶ 4      While the 2015 voluntary petitions were pending, the Cook County Forest Preserve and Palos Park meanwhile had entered into an intergovernmental annexation agreement, wherein Palos Park annexed about 190 acres of forest preserve. There was a public meeting in October to discuss the annexation. Palos Park and Lemont public officials, including the mayors, were present. The forest preserve annexation to Palos Park subsequently became final on December 14, 2015, following a public hearing. According to the Palos Park attorney, the forest preserve

---

[1]John B. Murphey, the attorney who represents Mid-Iron and Gleneagles, filed an appearance in this appeal only on behalf of Gleneagles.

[2]Cog Hill golf course comprises Cook Golf Properties, Inc., and Pine Meadow Golf Club, Inc.

[3]Ludwig Farms is not a party to this appeal.

annexation created actual contiguity between Palos Park and Mid-Iron Golf Club, thus teeing up the annexation of Mid-Iron Golf Club. With a domino-like effect, this then created contiguity to annex Gleneagles, then Cog Hill, and then Ludwig Farms, all to Palos Park. The owner of Gleneagles also attested that the Village of Lemont had positioned itself against the golf courses' annexation due to lack of contiguity, and the annexation of the forest preserve was meant to resolve that matter.

¶ 5     In challenging these annexation efforts, on December 11, 2015, some 14 residential landowners,[4] occupying a small percentage of the unincorporated territory, filed what all parties agree is considered a "forcible" or "involuntary" annexation petition under section 7-1-2 of the Municipal Code (65 ILCS 5/7-1-2 (West 2014)). They claimed a portion of the Gleneagles property should instead be annexed to Lemont and requested a hearing. The residential landowners sought to have about 117 acres annexed to Lemont. Those residential landowners' property consisted of 7 acres, all of which was, to use golf terminology, out of bounds from the 110-acre golf course. The Village of Lemont later intervened in this case, joining the residential landowners and admitting that Lemont's future planned growth had included Gleneagles and Cog Hill. It is claimed that a valid involuntary petition would have threatened the contiguity that the other golf courses and the farm had with Palos Park, and thus the involuntary petition was a means of thwarting the voluntary annexation petitions.

¶ 6     On December 31, 2015, Palos Park objected (see 65 ILCS 5/7-1-3 (West 2014)), noting that the golf courses and Ludwig Farms had already filed voluntary petitions and they were "actively working with Palos Park to complete the annexations" to Palos Park. Palos Park noted that permitting the annexation of the residential landowners' property would lead to the anomalous result of having Gleneagles golf course municipally split in half, with a portion joining Palos Park (or remaining unincorporated) and a portion joining Lemont. Palos Park argued, for example, that Gleneagles' voluntary section 7-1-8 petition had priority over that filed by the residential landowners and that the residential landowners failed to give proper notice of their petition. Palos Park requested that the court dismiss the petition, and Cog Hill, Gleneagles, and Mid-Iron joined in the objection.

¶ 7     Pursuant to the landowners' request, on January 7, 2016, the section 7-1-2 hearing was held with the parties present to discuss the December 11 involuntary annexation petition. As discussed in further depth below, Palos Park and the golf courses (collectively, Objectors) requested a continuance based on Palos Park's anticipated adoption of annexation ordinances which was to occur several days later on January 15. The court granted the requested continuance for January 20 over the objection of the landowners (collectively with Lemont, Petitioners).

¶ 8     On January 11, the Petitioners filed a motion for a substitution of judge under section 2-1001(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(2) (West 2014)), which was denied.

¶ 9     On January 15, 2016, Palos Park adopted an annexation ordinance for Mid-Iron and Gleneagles. A month later on February 8, 2016, Palos Park adopted an annexation ordinance for Cog Hill and Ludwig Farms. Although the Objectors had been negotiating a memorandum of agreement for a number of months regarding the water and sewer services of their property, prior to the ordinances going into effect, the golf courses and Ludwig Farms notified Palos

---

[4]The petition also identifies them as 19 registered voters.

Park's attorney that they were waiving the need for an annexation agreement as a precondition to the annexation.

¶ 10    The matter proceeded with the parties engaging in discovery. The court granted the Objectors a protective order to limit discovery from January 1, 2015, forward. Objectors then filed a motion for summary judgment, which the court granted, holding the Objectors' earlier-filed 2015 voluntary petitions had priority over the Petitioners' involuntary petition. Petitioners now appeal from that judgment.

¶ 11                                          ANALYSIS

¶ 12    Petitioners first contend the trial court erred in denying their motion for substitution of judge. Under section 2-1001(a)(2) of the Code of Civil Procedure (*id.*), a litigant is allowed one substitution of judge without cause, and section 2-1001(a)(2) should be read as favoring substitution. *Bowman v. Ottney*, 2015 IL 119000, ¶ 18. This principle, however, does not permit a construction that permits "judge shopping," which occurs when litigants seek to substitute a judge after forming an opinion that the judge may be unfavorably disposed toward the merits of their case. *Id.*; *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 23.

¶ 13    To preclude "judge shopping," a motion for substitution of judge as of right must be filed at the earliest practical moment before commencement of trial or hearing and also before the judge rules upon any "substantial issue" in the case. *Chapman*, 2012 IL App (1st) 111792, ¶ 23. A substantial ruling is one that directly relates to the merits of the case. *In re Estate of Gay*, 353 Ill. App. 3d 341, 343 (2004). That includes where the party moving for substitution has discussed issues with the trial judge, who then indicates a position on a particular point. *Colagrossi v. Royal Bank of Scotland*, 2016 IL App (1st) 142216, ¶ 30. In addition, a substitution of judge may be denied, even where the judge did not rule on a substantial issue, where the litigant had an opportunity to test the waters and form an opinion as to the court's disposition of an issue. *Chapman*, 2012 IL App (1st) 111792, ¶ 23; see also *Colagrossi*, 2016 IL App (1st) 142216, ¶ 36 ("testing the waters" remains a viable objection to substitution of judge motions as of right in the First District); but see *Schnepf v. Schnepf*, 2013 IL App (4th) 121142, ¶¶ 29-30, 56 (departing from the overwhelming "weight of appellate authority" and rejecting the "test the waters" doctrine).

¶ 14    Under our *de novo* review, we conclude the trial court did not err in denying the substitution motion because there was a hearing, a substantive ruling, and opportunity for the Petitioners to "test the waters." See *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 246 (2006) (whether a trial court's ruling is "substantial" is a question of law). Here, as stated, the Objectors filed their voluntary petitions for annexation to Palos Park in spring 2015. On December 11, 2015, the Petitioners filed their own involuntary annexation petition, but the Objectors objected, citing notice deficiencies under the statute. See 65 ILCS 5/7-1-2 (West 2014). The parties then appeared, pursuant to Petitioners' own motion, for a section 7-1-2 hearing before the trial judge on January 7, 2016, with the Petitioners requesting a 28-day reappearance date so that they could provide proper notice to Gleneagles and then discuss discovery.

¶ 15    Palos Park, however, informed the court that the annexation of both Gleneagles and Mid-Iron was to take place in Palos Park on January 15, 2016, which arguably would render the Petitioners' section 7-1-2 petition moot (counsel argued a precondition for such a petition

was that the property sought to be forcibly annexed not be incorporated into a municipality already). The court noted that the Palos Park pleading, which included the voluntary petitions, "was extremely helpful" and counsel had described the "highlights" of the pleading. Palos Park argued against the Petitioners' actions of filing the involuntary petition, stating "[t]his is really nothing more than a tactic to interrupt the voluntary petition which has priority." Palos Park argued that there should be a status hearing following the annexation and it could then file a motion to dismiss. The attorneys representing Mid-Iron, Gleneagles, and Cog Hill essentially agreed with Palos Park, adding that the parties could present the court with certified copies of the Palos Park annexation ordinances and then "decide what they want to do." Counsel for the Petitioners acknowledged, "[i]t just sounds like we just heard oral argument after a bunch of testimony" and asserted that the matter needed to be further briefed, but then counsel argued the Objectors' inaction on previously filed annexation petitions had rendered the Gleneagles 2015 petition ineffective and further that Petitioners' notice was sufficient under the directory section 7-1-2 statute.

¶ 16    Over the Petitioners' objection, the court granted the Objectors' request to meet shortly after the annexation ordinances were to pass in Palos Park, and the court set a hearing date on January 20, thereby rejecting the Petitioners' argument that the court could "still move forward" on their involuntary annexation petition. This was an implicit if not explicit substantive ruling in favor of the Objectors. In granting the Objectors' request, the future of the Petitioners' petition was thrown into question, making their motion for a substitution of judge untimely and tantamount to judge shopping. See *Hoellen*, 367 Ill. App. 3d at 247. Moreover, as Palos Park and the golf courses noted in response to the substitution of judge motion, a hearing was required to be held within a 20- to 30-day period following the filing of the involuntary annexation petition, and that hearing was held on January 7. See 65 ILCS 5/7-1-2 (West 2014). This further confirms the substantive nature of the court's ruling and that a hearing in the case already had begun prior to the substitution motion. Even if we were to find the court's January 7 hearing and continuance was not substantive, it certainly presented the Petitioners with the opportunity to "test the waters" and discern the judge's potentially unfavorable disposition on the merits of their claim. See *Hoellen*, 367 Ill. App. 3d at 247. It is not lost upon us that the Petitioners had a hearing on their January 11 substitution motion on January 14, which just happened to be one day before several Palos Park annexation ordinances were to be adopted. For all of these reasons, the Petitioners' argument fails.

¶ 17    The Petitioners next challenge the summary judgment granted in favor of the Objectors. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with the affidavits, if any, demonstrate there is no genuine issue as to any material fact so that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2014); *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008). The court must consider such items strictly against the movant and liberally in favor of the nonmovant. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of triable fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). A triable issue precluding summary judgment exists where the material facts are disputed or where the material facts are undisputed but reasonable people could draw different inferences from those undisputed facts. *Id.* at 43. If the moving party supplies facts that, if not contradicted, would entitle that person to judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise

genuine issues of material fact. *Piquette v. Midtown Anesthesia Associates*, 192 Ill. App. 3d 219, 222-23 (1989). We review the trial court's order granting summary judgment *de novo*. *Ioerger, Inc.*, 232 Ill. 2d at 201.

¶ 18    The Petitioners first contend that Gleneagles' and Mid-Iron's voluntary petitions[5] do not have priority over the later-filed involuntary petition because there is no evidence the Palos Park village clerk received them, as required. See 65 ILCS 5/7-1-8 (West 2014). We agree with Objectors that this is a spurious claim. A document is considered filed when it is deposited with and passes into the exclusive control and custody of the clerk, who understandingly receives the same in order that it may become a part of the permanent records of his office. *Gietl v. Commissioners of Drainage District No. One*, 384 Ill. 499, 501-02 (1943). Here, the Palos Park manager Richard Boehm testified that he received Gleneagles' petition and deposited it in the village clerk's office, where it was filed in April 2015. He also testified that the Palos Park attorney filed Mid-Iron's petition, also transmitting it to the village clerk's office in March 2015. *People ex rel. Village of Orland Hills v. Village of Orland Park*, 316 Ill. App. 3d 327, 338-39 (2000); see also *Valio v. Board of Fire & Police Commissioners*, 311 Ill. App. 3d 321, 327 (2000) (ministerial tasks such as stamping a pleading "filed" are unnecessary to perfect a filing). Boehm's testimony as to Gleneagles is supported by the petition itself, which has attached thereto a notary page and acknowledgement that Boehm received the petition on April 14, 2015, on behalf of Palos Park. The Petitioners have provided no contrary evidence, and the Municipal Code does not require a date and time stamp from the clerk's office evidencing the filing, so accordingly, we reject their claim. See *Piquette*, 192 Ill. App. 3d at 222-23; see also *Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 61 (speculation, conjecture, or guess is insufficient to withstand summary judgment).

¶ 19    The Petitioners also contend the trial court erred in ruling that the 2015 voluntary annexation petitions had priority over the later-filed involuntary petition and thus were not abandoned by the Objectors. A proceeding for annexation itself involves an incorporation of the previously unincorporated territory. *City of Countryside v. Village of La Grange*, 24 Ill. 2d 163, 166 (1962). A section 7-1-8 voluntary annexation proceeding is "initiated" by the filing of a petition by the landowner, and the annexation is completed by the final action of the municipality. *In re Petition to Annex Certain Property to the City of Wood Dale*, 244 Ill. App. 3d 820, 827 (1993). Public policy and fundamental fairness favor voluntary annexations by landowners over involuntary annexations. *Id.*

¶ 20    The general rule governing conflicting petitions to annex or incorporate the same tract of land is that the first to initiate an annexation petition is entitled to priority over the property

_____

[5]Petitioners do not develop an argument about why we should consider when the golf courses, other than Gleneagles, filed their petitions with the clerk's office. They point to deposition testimony regarding both Gleneagles and Mid-Iron, which is why we highlight both above. However, Petitioners in particular do not develop an argument regarding Cog Hill, thus waiving the matter. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (an appellant's argument must contain the contentions of the appellant and the reasons therefor, with citation to authorities and record relied on, and points not argued are waived); *Marzouki v. Nagar-Marzouki*, 2014 IL App (1st) 132841, ¶ 12. We note, however, that Objectors have supplied this court with the affidavit of William Hennessy, attorney for Gleneagles, Cog Hill, and Ludwig Farms, who attested that he presented Cog Hill's petition to Palos Park on March 24, 2015. Palos Park Village Manager Richard Boehm testified that he received the petitions from Hennessy and "[o]nce I received these petitions, they were delivered to the village clerk's office."

against all other parties initiating a proceeding at a later date. *In re Petition for Submittal of the Question of Annexation to the Corporate Authorities of the City of Joliet*, 282 Ill. App. 3d 684, 689 (1996). Priority in time typically is determined by the time of initiation of annexation proceedings. *In re Annexation of Certain Territory to the Village of Deer Park*, 358 Ill. App. 3d 92, 96 (2005). Nonetheless, a party loses its right to priority if it is found to have abandoned its petition. *Joliet*, 282 Ill. App. 3d at 689. This occurs when "a party takes no action on an annexation proceeding and frustrates the annexation plans of a neighboring community." *Id.* A claim of abandonment, however, may be defeated by evidence showing that actions were taken relating to the annexation petition. *Id.*

¶ 21    Here, the Objectors engaged in sustained and consistent action to advance the 2015 voluntary petitions. This is supported by the affidavits and evidence regarding activities between January 2015 and spring 2016, attached to the Objectors' summary judgment motion. For example, Palos Park manager Richard Boehm attested that he had coordinated and handled documents needed to establish contiguity and municipal services to the annexed parties. He had met with the village mayor and other municipal employees to advance the process and handled the forest preserve annexation. Palos Park attorney Thomas Bayer attested that he had worked with the Palos Park mayor, village manager, village council and staff on the annexation. He negotiated documents needed to annex the property, aided in establishing contiguity between Palos Park and the property to be annexed, and also reviewed various documents. He attached his billing report for which he was paid by Palos Park. Cog Hill's civil engineer Mary Catherine McBride attested that she had worked with the village engineer, village attorney, and ComEd on annexation and utility connections with Palos Park. William Hennessey, the attorney for Gleneagles, Cog Hill, and Ludwig Farms, attested that he represented the parties in extensive annexation negotiations, including drafting the memorandum of agreement between the golf courses, Ludwig Farms, and Palos Park for water and sewer services and attending a June 2015 meeting at which the Palos Park village mayor, manager, engineer, and attorney were present, among others. As of August 2015, he had sent a revised memorandum of agreement to a number of the parties involved in annexation efforts, including Palos Park's mayor. Gleneagles' president William McNulty attested that he had actively negotiated with Palos Park representatives to annex the various golf courses and farm to Palos Park and participated in the June 2015 meeting with various parties, including the village mayor, administrator, engineer, and attorney.

¶ 22    In short, the documents and affidavits show that throughout 2015, there were numerous meetings and extended coordination among various parties to determine detailed plans as to electricity, sanitary sewer engineering, water main extension, easements, zoning, and the fiscal impact of annexing the properties. In addition, the Gleneagles annexation was preceded by negotiations between Palos Park and the forest preserve district to annex the forest preserve property. This annexation facilitated the Objectors' annexations because it conclusively provided contiguity, as required by section 7-1-8, to the Objectors' properties.[6] The

---

[6]The Petitioners essentially ask that we discount Palos Park's efforts to annex the forest preserve. They assert the forest preserve annexation cannot constitute "action" by Palos Park corporate authorities in support of the Objectors' voluntary petitions to annex territory to Palos Park. They now contend that the forest preserve annexation was unnecessary to establish contiguity with the golf courses because such property falls under a legal exception. Rather than citing law or the testimony of a lawyer to support this proposition, Petitioners cite the deposition of Cog Hill's engineer, McBride,

Petitioners do not necessarily dispute the facts that the Objectors rely on for summary judgment, and reasonable people could not draw different inferences from those facts showing sustained activity by the Objectors. This justifies summary judgment in favor of the Objectors. See *Adams*, 211 Ill. 2d at 43.

¶ 23 Relying on the seminal case, *People ex rel. Village of Worth v. Ihde*, 23 Ill. 2d 63, 67-68 (1961), Petitioners nonetheless contend that in viewing "action" taken to pursue an annexation, courts can only consider the official actions of the corporate authorities, including the mayor and village council. See also 65 ILCS 5/1-1-2 (West 2014). They argue that in this instance, the corporate authorities did not act promptly enough between the filing of the petitions and the official approval of the annexation ordinance to satisfy *Worth*. In *Worth*, Chicago Ridge filed a petition to annex property in November 1957. In December, the village board "tabled" the annexation motion until further notice, but ultimately approved the annexation almost a year after the petition in September 1958. Meanwhile, Palos Hills had petitioned to incorporate with this property in April 1958. The supreme court held Chicago Ridge had abandoned the annexation petition because "no action" was taken on it by Chicago Ridge between December 1957 and September 1958, in spite of the Palos Hills incorporation petition filed in April. See also *Countryside*, 24 Ill. 2d at 167 (following *Worth*). The *Worth* court added, "There was no showing whatsoever that the board action was necessarily delayed or that the Palos Hills incorporation petitioners knew of the annexation petition." *Worth*, 23 Ill. 2d at 68. In *dicta*, the court wrote that had Chicago Ridge authorities "promptly acted to approve the annexation request, a different question would be presented." *Id.*

¶ 24 Contrary to Petitioners' argument, *Worth* does not stand for the proposition that prompt action by the corporate authorities following the filing of an annexation petition is *required*. What matters is *some action* on the part of the corporate authorities or a showing that the corporate action was delayed. Here, as previously elucidated, we have both. The record makes clear that the corporate authorities, mainly Palos Park's mayor, and Palos Park's executive/corporate employees, including its village manager and attorney, were aware of the golf courses' 2015 annexation petitions, and they took action throughout 2015 toward formally approving the annexation petitions. The delay was due to coordination among the various parties for provision of such things as sewer and water service, which the Objectors desired to have encapsulated in a formal agreement before annexation. Moreover, the record shows that Lemont knew about these activities, thus calling into question their involuntary petition under *Worth*. Additionally, the Palos Park corporate authorities did indeed pass the annexation

wherein she testified that contiguity is allowed across forest preserve lands. McBride, however, also testified "there was some concern that perhaps the contiguity across forest preserve lands might have been protested." Regardless, because Petitioners failed to cite the statute or any law to support their claim in their opening brief, they waived the matter. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (an appellant's argument must contain the contentions of the appellant and the reasons therefor, with citation to authorities, and points not argued shall not be raised in the reply brief); *Marzouki*, 2014 IL App (1st) 132841, ¶ 12. They also did not explain how the forest preserve exception, which is contained in section 7-1-1 of the Municipal Code and which contains various requirements, applies to the facts of this particular case. See *Marzouki*, 2014 IL App (1st) 132841, ¶ 12; see also 65 ILCS 5/7-1-1 (West 2014). In addition, their contention now contradicts their pleadings and the evidence in the trial court, indicating that the existence of the forest preserve property protected *against* annexation by either municipality and that Lemont was opposed to the forest preserve annexation.

ordinances within a two-month period following the Petitioners' December 2015 involuntary annexation petition, unlike in *Worth* where Chicago Ridge sat on the annexation petition for more than four months after the contrary petition was filed.

¶ 25 Cases decided since *Worth* also support our interpretation. In *People ex rel. Village of Long Grove*, 199 Ill. App. 3d 395, 414 (1990), the court considered the three meetings of the village planning commission, one of which was public, and the village's hiring of a traffic engineer as "action" needed to sustain an annexation petition for priority purposes. *Long Grove* rejected the argument that courts must focus solely on when corporate authorities vote for the annexation petition, stating "[a] municipal government should have an opportunity to study carefully and consider the potential effect of a proposed annexation upon the municipality." *Id.* In *Joliet*, 282 Ill. App. 3d at 687, the appellate court looked to the five-year negotiations of the parties and actions of the village employees and attorneys as the "action" needed to sustain the annexation petition against an abandonment claim. Based on the foregoing, Petitioners' claim of abandonment must fail, and the trial court rightly held that the Objectors' earlier-filed 2015 voluntary annexation petitions had priority over the Petitioners' involuntary annexation petition.

¶ 26 In light of our holding, we likewise reject Petitioners' argument that the trial court abused its discretion in limiting discovery to "January 1, 2015, and forward." Petitioners now argue this date is "completely arbitrary." They note that Gleneagles filed petitions to annex its property to Palos Park in November 2009, June 2011, and April 2015. They argue information on the prior petitions was relevant to demonstrate that the Objectors exhibited actions "designed to frustrate the natural growth and progression of Lemont, and to cut off certain unincorporated territories in the Village of Lemont's planning jurisdiction." They also argue information could support an argument for abandonment by the Objectors.

¶ 27 The trial court is given great latitude in determining the scope of discovery because the range of relevance and materiality for discovery purposes includes not only what is admissible at trial but also that which leads to what is admissible at trial. *The Y-Not Project, Ltd. v. Fox Waterway Agency*, 2016 IL App (2d) 150502, ¶ 43. Although the scope of permissible discovery is broad, it is not unlimited, and the court must balance the needs of truth and excessive burden to the litigants. *Id.* A reviewing court will not disturb a discovery order absent an abuse of discretion. *Id.* We agree with the Objectors that the prior voluntary petitions, which were never challenged by any opposing annexation petitions, are irrelevant to the matter at hand, which was determining the priority for the 2015 annexation petitions. Petitioners have not cited any law demonstrating that those prior petitions could even be considered still jurisdictionally "live" once they were replaced with the 2015 petition. No amount of discovery from previous years would have enabled Petitioners to defeat the activity that took place throughout 2015, which established the Objectors' priority for annexation. The trial court did not abuse its discretion.

¶ 28 CONCLUSION

¶ 29 Based on the foregoing, we affirm the judgment of the trial court.

¶ 30 Affirmed.